2000 Utah Ct. App. 155

STATE of Utah, Plaintiff and Appellee,

v.

Brian James RUDOLPH, Defendant and Appellant.

No. 990534–CA.

Court of Appeals of Utah.

May 25, 2000.

John D. O'Connell, Jr., and Kent R. Hart, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Jan Graham, Atty. Gen., and Christine Soltis, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., DAVIS, and ORME, JJ.

OPINION

DAVIS, Judge:

¶ 1 Defendant appeals the jury's verdict finding him guilty of aggravated robbery, a

first degree felony, in violation of Utah Code Ann. § 76–6–302 (1999). We affirm.

## FACTS

¶ 2 "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Loose*, 2000 UT 11, ¶ 2, 994 P.2d 1237.

¶ 3 Greg Davis, a front desk clerk for the Deseret Inn, was working on the night of January 20, 1998. By 6:00 p.m., there was approximately $800 to $850 in the cash box. Between 6:00 and 7:00 p.m., defendant entered the motel lobby. Davis was immediately aware of defendant because of ·chimes on the front door and was instantly alarmed because defendant's hands were in his front pockets.

¶ 4 Defendant stood directly across the counter from Davis, within approximately three feet, and asked how much a room cost. After Davis told him the price of a room, defendant pulled a gun out of his right, front pants' pocket and told Davis to give him the money out of the cash drawer. Davis moved down the counter to the cash register, put the cash box on the counter, and watched as defendant took the money from the cash box. Davis then backed into a small room directly behind the front desk, locked the door, and waited until he heard the front door chime, indicating that defendant had left.

¶ 5 During the time defendant was in the Deseret Inn's lobby, Leonard McCann had parked at the front door to check into a room for the night. Seeing defendant at the front counter and assuming he was there to register for a room, McCann stayed in his car to wait until defendant was done. McCann got out of his car and walked past defendant as defendant was exiting the lobby and McCann was entering it.

¶ 6 When McCann entered the lobby, Davis told him that he had just been robbed.

McCann immediately stepped outside to see what direction defendant was heading. McCann saw defendant heading west and, knowing that he would be questioned regarding defendant's identity, took particular note of what he was wearing.[1]

¶ 7 Because of the direction McCann had reported defendant was fleeing, the police focused on the Hilton Hotel. Officer Kerry Fowler entered from the east side of the building to begin his search while his partner entered from the west. As Officer Fowler canvassed his appointed area, defendant, who was then talking on the telephone, drew his attention. Officer Fowler noted that defendant generally fit the description given by Davis.[2] Officer Fowler and his partner stopped defendant and asked him why he was there, to which defendant responded that he was meeting his friend, Ed Bernard. Defendant subsequently told another officer that he was meeting his girlfriend, Melanie Swallow, for dinner.

¶ 8 Angela Dent was a supervisor at Annabelle's, a restaurant inside the Hilton Hotel. While defendant was in the hotel office with the police, Dent walked by and noticed defendant in police custody. Dent recognized defendant because she had seated.him earlier at Annabelle's, and when she returned approximately ten minutes later to see if he had been served, she discovered that defendant had left, leaving his sweater behind in a chair at the table. Dent turned the sweater over to the police.

¶ 9 Luis Chuba was a housekeeping·supervisor for the Hilton Hotel. At approximately 7:00 p.m. the same night Davis was robbed, Chuba emptied the trash can in the men's restroom across the hall from Annabelle's and near the pay phone where Officer Fowler had seen defendant talking. Because the trash bag was askew, Chuba dumped the whole trash can and discovered that a gun

---

1. McCann testified as follows regarding defendant's appearance:

   I could see a white color coming out from his sweater. I thought it was a turtleneck.... He had on a gray sweater and then he had on blue pants. And they didn't look like regular jeans. They weren't the color of regular jeans, the dark color. They were a brighter blue.

2. Officer Fowler testified as follows regarding defendant's appearance:

   At the time he was wearing a white t-shirt, his hair was, appeared to be wet like he had just wet it down and dried it with a towel, kinda sticking up and kind of in a spiked look, wearing Levi's, had [two] earrings.... I think he was wearing glasses.

had been placed underneath the trash bag in the trash can. Chuba turned the gun over to the police who were at the Hilton questioning defendant. Davis testified that the gun was similar to the one defendant had used during the robbery.

¶ 10 Davis was brought to the Hilton to identify defendant. Davis did not enter the office in which defendant was sitting, but stood on the other side of a glass partition. When asked if he could identify defendant as the man who had robbed him at the Deseret Inn, Davis said that he was fifty percent sure that defendant was the same man. Davis noted that the differences were: (1) the person in custody did not have a grey sweater on, but the person who robbed him did; (2) at the time he robbed Davis, the person's hair had mousse in it and his hair was spiked; the person's hair at the Hilton was smoothed down; and (3) the robber was not wearing glasses, while the person at the Hilton was. While Davis had also noted that the person who robbed him smelled strongly of cologne or mousse, the glass partition at the Hilton prevented him from detecting any smell.

¶ 11 Defendant was arrested and transported to the Salt Lake County jail. When he was searched at the jail, $850 was discovered hidden inside defendant's shoes.

¶ 12 Defendant was charged with aggravated robbery, a first degree felony in violation of Utah Code Ann. § 76–6–302 (1999). A jury trial was held, after which defendant was convicted as charged. Defendant now appeals.

## ISSUES

¶ 13 There are two issues for our review. The first is whether a criminal defendant must preserve a sufficiency-of-the-evidence claim at the trial court before he may raise that issue on appeal. The second is whether the evidence was insufficient to support a conviction.

## ANALYSIS

### 1. Preservation of Sufficiency–of–the–Evidence Claim

¶ 14 The State argues that before a criminal defendant may challenge the jury's verdict on appeal on the basis of insufficient evidence, he or she must first raise that issue and thereby preserve it at the trial court. The State readily concedes that this position is a novel one, and that preservation of sufficiency claims is neither required by the rules of procedure nor case law. However, it maintains that for sufficiency-of-the-evidence claims, as with any other claims on appeal, criminal defendants should be required to follow the well-established rule that if a party fails to bring an error to the trial court's attention, the appellate court will not address it absent plain error or exceptional circumstances. *See Monson v. Carver*, 928 P.2d 1017, 1022 (Utah 1996) (" '[I]ssues not raised at trial cannot be argued for the first time on appeal.' This rule applies to all claims, including constitutional questions, unless the petitioner demonstrates that 'plain error' occurred or 'exceptional circumstances' exist." (quoting *State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994))).

¶ 15 "A timely objection provides the trial court with 'an opportunity to address a claimed error and, if appropriate, correct it.' " *State v. Labrum*, 925 P.2d 937, 939 (Utah 1996) (quoting *State v. Eldredge*, 773 P.2d 29, 36 (Utah 1989)). The preservation doctrine also prohibits parties from "foregoing those objections at trial as part of a 'strategy that counsel thinks will enhance the defendant's chances of acquittal and then, if that strategy fails, ... claim[ing] on appeal that the Court should reverse.' " *Id.* (quoting *State v. Bullock*, 791 P.2d 155, 159 (Utah 1989)) (omission and alteration in original).

¶ 16 Neither of the above policy reasons supporting the preservation doctrine is present with a sufficiency-of-the-evidence claim.

### a. Opportunity to Correct

¶ 17 When the jury renders a verdict, as a practical matter there is little, if anything, relative to the sufficiency of the evidence that can be corrected. Even if the trial court is asked to review the sufficiency of the evidence, say, in the context of a motion to arrest judgment, or motion for new trial, the " 'trial court may arrest a jury

verdict when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element.'" *State v. Giles,* 966 P.2d 872, 876–77 (Utah Ct.App.1998) (quoting *State v. Workman,* 852 P.2d 981, 984 (Utah 1993)). The standard is the same when the appellate court is asked to review the evidence and determine whether it was sufficient to support the verdict. *See Workman,* 852 P.2d at 984; *Giles,* 966 P.2d at 876. Of course, when reviewing a trial court's grant or denial of a sufficiency-of-the-evidence claim, this court will similarly review all the evidence relevant to the challenge. *Cf. State v. Colwell,* 2000 UT 8, ¶ 11, 994 P.2d 177 ("When reviewing any challenge to a trial court's denial of arrest of judgment, we review the evidence and all reasonable inferences that may fairly be drawn there from [sic] in the light most favorable to the jury verdict."). Hence, because this court is in as good a position as the trial court to review the evidence and make that determination, nothing is lost by waiting until the appeal stage to challenge the sufficiency of the evidence. *Cf. State v. Blubaugh,* 904 P.2d 688, 694 n. 3 (Utah Ct.App.1995) (holding that defendant's claim of error on appeal that trial court erroneously denied motion to arrest judgment based on insufficient evidence was moot because appellate court found there was sufficient evidence supporting guilty verdict).

■ ¶ 18 Perhaps a more compelling reason to reject the State's position is the potential burden on the trial courts. It is well established that a defendant's burden on appeal when challenging the sufficiency of the evidence after a jury trial is to " 'marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict.'" *State v. Hopkins,* 1999 UT 98, ¶ 14, 989 P.2d 1065 (citation omitted); *accord State v. Shepherd,* 1999 Utah Ct. App. 305, ¶ 25, 989 P.2d 503; *State v. Vessey,* 967 P.2d 960, 966 (Utah Ct.App.1998). Assuming the scope of review of sufficiency claims is essentially the same in both the trial and appellate courts, should the trial court be required to conduct lengthy post-trial proceedings including a transcript review for marshaling purposes to preserve a sufficiency claim for appeal? We think not. *Cf. State v. Ashley,* 126 Idaho 694, 889 P.2d 723, 729 (Ct.App. 1994) ("Appellate review can just as easily be conducted on the existing trial record on direct appeals from judgments of conviction, without first having to exhaust the limited time and resources of the trial courts through the post-conviction process under the guise of claims of ineffective assistance of counsel.").

### b. Trial Strategy

¶ 19 The State also maintains that the preservation doctrine should apply to sufficiency-of-the-evidence claims because a defendant may, as a matter of strategy, decide to forego challenging evidence at trial. *See Labrum,* 925 P.2d at 939 (stating that waiver rule prohibits parties from "foregoing those objections at trial as part of a 'strategy that counsel thinks will enhance the defendant's chances of acquittal and then, if that strategy fails, ... claim[ing] on appeal that the Court should reverse' ") (citation omitted; omission and alteration in original). The State uses the case before us as an example, contending that while defendant claims he is not arguing that Davis's eyewitness testimony was inadmissible, *see State v. Ramirez,* 817 P.2d 774, 779–81 (Utah 1991) (discussing "the analytical model to be used by a trial court in determining the admissibility of arguably suggestive eyewitness identification"), that is what his argument essentially amounts to. The State argues that defendant attempts to resuscitate a *Ramirez* objection that should have been raised before the trial court by cloaking it as a challenge to the sufficiency of the evidence. Thus, according to the State, by requiring a criminal defendant to object to the sufficiency of the evidence at the trial court level, this type of second bite at the apple would not occur.

■ ¶ 20 We disagree with the State's argument. Clearly, a criminal defendant is entitled to forego objecting to the admissibility of evidence of questionable reliability in an effort to taint the State's entire case, know-

ing full well that he or she will ordinarily be unable to challenge admissibility on appeal. *See* Utah R. Evid. 103(a). Moreover, as defendant stated at oral argument, this appeal does not present a disguised *Ramirez* challenge, but presents a legitimate sufficiency-of-the-evidence issue.

¶ 21 Although it is neither uncommon nor inappropriate to challenge the sufficiency of the evidence in the context of a post-trial motion, such a challenge should not be a prerequisite to challenge the same on appeal. We decline the State's invitation to establish such a rule.[3]

### 2. Sufficiency of the Evidence

¶ 22 Defendant argues that the evidence was insufficient to convict him of aggravated robbery. The court's " ' "power to review a jury verdict challenged on grounds of insufficient evidence is limited." ' " *State v. Pearson*, 1999 Utah Ct. App. 220, ¶ 15, 985 P.2d 919 (citations omitted).

> We will reverse a jury verdict only when, after viewing the evidence and all inferences drawn therefrom in a light most favorable to the verdict, we find that "the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust."

*State v. Heaps*, 2000 UT 5, ¶ 19, 999 P.2d 565 (citation omitted).

¶ 23 Defendant premises his argument on the show-up identification by Davis when defendant was detained in the hotel office. Defendant argues that because (1) within a short period after the robbery,

Davis was only able to say that he was fifty percent sure that defendant was the same person who had robbed him at gunpoint; and (2) Davis had noted some discrepancies in defendant's appearance versus the robber's, his eyewitness testimony is insufficient to establish defendant's identity.[4] However, the fact that Davis was unwilling to say that the man in police custody was positively the same man who robbed the hotel because of the distinguishing characteristics goes to his credibility and the weight to be given his identification testimony, a determination properly for the jury. *See State v. Colwell*, 2000 UT 8, ¶ 41, 994 P.2d 177 ("It is ... the responsibility of the jury to evaluate the evidence and give its own weight to the evidence in rendering its verdict."); *State v. Nelson*, 950 P.2d 940, 943 (Utah Ct.App.1997) ("Once admitted, the jury determines the weight to credit [eyewitness identification] evidence and is the ultimate finder of fact."). Additionally, several months after the robbery, Davis was able to positively identify defendant at a lineup. Considering the later positive identification together with the additional evidence supporting defendant's conviction, we cannot say that Davis's reluctance at the show-up identification to positively identify defendant as the robber tainted the evidence making the verdict unreasonable and unjust.

### CONCLUSION

¶ 24 We decline the State's invitation to establish a new rule requiring a criminal defendant to preserve a sufficiency-of-the-evidence claim by making an objection or

---

**3.** The Rules of Civil Procedure require that a motion for a directed verdict be made before the trial court can entertain a motion for a judgment notwithstanding the verdict (JNOV), *see* Utah R. Civ. P. 50(b), and the appellate courts' scope of review of sufficiency claims has been similarly restricted. *See Henderson v. Meyer*, 533 P.2d 290, 291–92 (Utah 1975) (footnote omitted); *Pollesche v. Transamerican Ins. Co.*, 27 Utah 2d 430, 433, 497 P.2d 236, 238 n. 1 (1972).

The Rules of Criminal Procedure, however, have no corresponding requirement. Rule 17(*o*) of the Utah Rules of Criminal Procedure provides that the court may dismiss any or all charges either at the close of the prosecution's case or "at

the conclusion of all the evidence." Utah R.Crim. P. 17(*o*). A motion to arrest judgment under Rule 23 of the Utah Rules of Criminal Procedure or a Rule 24 motion for a new trial are not conditioned upon a prior motion challenging the sufficiency of the evidence.

Because the trial court can reach a sufficiency claim at various stages of criminal proceedings without preconditions, it follows that the appellate court may conduct a similar review.

**4.** Defendant does not argue that Davis's eyewitness identification was constitutionally unreliable, and therefore inadmissible. *See State v. Nelson*, 950 P.2d 940, 943 (Utah Ct.App.1997).

filing a motion challenging the sufficiency of the evidence at the trial court level. Further, although Davis refused to state that he was one hundred percent sure that the person in police custody was the same man who had robbed him earlier, his later positive identification together with the other evidence at trial was sufficient to support the jury's verdict.

¶ 25 Affirmed.

¶ 26 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and GREGORY K. ORME, Judge.