2000 UT App 292

**STATE of Utah, Plaintiff and Appellee,**

v.

**Joey Luis SILVA, Defendant and Appellant.**

**No. 990331–CA.**

Court of Appeals of Utah.

Nov. 2, 2000.

Scott L. Wiggins, Arnold & Wiggins, PC, Salt Lake City, for Appellant.

Jan Graham, Atty. Gen. and Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before JACKSON, Associate P.J., and DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

¶1 Defendant Joey Louis Silva (Silva) appeals his conviction of communications fraud, in violation of Utah Code Ann. § 76–10–1801 (1999), and attempted escape, in violation of Utah Code Ann. § 76–8–309 (1999).

## BACKGROUND

¶2 In July of 1998, Silva was an inmate at Davis County Jail where he was being held subject to $25,000 bail. While in jail, Silva befriended another inmate named Calvin Slaugh (Slaugh) who was awaiting sentencing.

¶3 In the course of their conversations, Silva told Slaugh that he was related to a bail bondsman and he offered to help Slaugh arrange bail. Silva requested the phone number for Slaugh's brother stating that he would contact the brother and help him arrange bail for Slaugh. Slaugh agreed to this arrangement and gave Silva the phone number of his brother.

¶4 Silva called Slaugh's brother from the Davis County Jail and identified himself as an attorney named Paul. Silva told the brother that he was arranging bail for Slaugh, and due to the nature of the charges against Slaugh, Slaugh was being held under a different name to protect him from other prisoners. Silva told the brother that Slaugh's alias was "Joey Silva" and he directed the brother to make all bail arrangements under this alias. Silva then told the brother to contact a particular bail bondsman. Shortly after this conversation, the brother contacted the bail bondsman and indicated that he was willing to pledge his home as collateral on a bail bond for Joey Silva's release.

¶5 During this time, an officer at Davis County Jail was reviewing recordings of telephone calls made from the jail as part of an unrelated investigation. On one of these recordings, the officer heard Silva's distinctive voice—Silva has a strong New England ac-

cent—and the officer listened long enough to suspect that Silva was engaged in some sort of criminal activity. Consequently, the officer initiated an investigation into the matter, and eight conversations involving Silva were recorded.

¶ 6 Meanwhile, the bail bondsman arranged to meet Slaugh's brother in the jail lobby to finalize the bail agreement. After meeting the brother at the jail and inspecting Joey Silva's booking sheet, the bondsman became concerned that Slaugh's brother was pledging his home as collateral for someone to whom he was not related. The bondsman's concern increased when, contrary to the information on Joey Silva's booking sheet, the brother stated that "Joey Silva" was in his seventies. Due to his concerns, the bondsman continued to question Slaugh's brother in an effort to get the whole story. After some prompting by the bondsman, the brother explained that his brother was actually named Slaugh, but he had been instructed to use the name Joey Silva when he posted bail. The bondsman realized that the brother was being bamboozled and told the jail authorities.

¶ 7 Silva was charged with communications fraud and attempted escape. Shortly before trial, the State gathered several voice identification witnesses together to determine whether they could identify Silva's voice on the taped conversations. The investigating officer asked these witnesses if they could recognize Silva's voice and played the taped phone conversations for the witnesses. While the tapes were playing, some of the witnesses made comments and nodded their heads indicating that they recognized Silva's voice on the tapes. Another voice identification witness, who was not at this conference, was given tapes for identification purposes. These tapes were marked, "Conversations involving Joey Silva."

¶ 8 During trial, the State called several witnesses to identify the voice on the recorded phone conversations. The witnesses testified that they were familiar with Silva's voice and that they recognized Silva's voice on the tapes. The witnesses also testified that they were sure of their identifications due to their prior interactions with Silva and the unique

characteristics of Silva's voice—especially his heavy New England accent. During the examination of one of these voice identification witnesses, Silva learned of the circumstances under which some of the witnesses initially heard the tapes. Consequently, Silva moved to suppress the voice identification of the witnesses, asserting that the circumstances surrounding the identifications were unduly suggestive. Pursuant to Silva's motion, the court evaluated the threshold admissibility of the voice identification testimony of each witness by engaging in an analysis akin to that required for the admission of eyewitness testimony. The court then concluded that the identifications were admissible. The jury ultimately found Silva guilty of communications fraud and attempted escape.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 Silva argues that the court erred in admitting the voice identification testimony of the State's witnesses. Silva first asserts that the court thereby deprived him of due process. Therefore, "[o]ur task is to review the record evidence and determine from the totality of the circumstances whether the admission of the identification is consistent with the due process guarantees of article I section 7 [of the Utah Constitution]." *State v. Ramirez*, 817 P.2d 774, 781 (Utah 1991) (stating that due process analysis for determining admissibility of eyewitness identifications under Utah Constitution will meet or exceed in rigor the federal standard).

■ ¶ 10 Silva then asserts, in effect, that the testimony should not have been admitted in accordance with Rule 901 of the Utah Rules of Evidence. "In reviewing a trial court's decision to admit evidence, we apply several standards of review." *State v. Jacques*, 924 P.2d 898, 900 (Utah Ct.App. 1996). To determine whether the trial court correctly admitted voice identification testimony under Rule 901 of the Utah Rules of Evidence,

> we first apply a correction of error standard to the legal content of that decision. In making this determination, "we examine (1) whether the trial court selected the correct rule of evidence, (2) whether the

trial court correctly interpreted that rule, and (3) whether the trial court correctly applied the rule."

*Id.* (citation omitted).

¶ 11 After reviewing the trial court's legal decision for correctness, we apply an abuse of discretion standard in determining whether the trial court reasonably determined that the witness properly identified the voice on the tape under Rule 901. *See id.*

¶ 12 Silva also argues that he did not receive effective assistance of counsel because his counsel did not request a cautionary jury instruction regarding the voice identification testimony of the State's witnesses. " 'When, as in this case, the claim of ineffective assistance is raised for the first time on appeal, we resolve the issue as a matter of law.' " *State v. Gallegos,* 967 P.2d 973, 975–76 (Utah Ct.App.1998) (citation omitted).

¶ 13 Finally, Silva argues that there was insufficient evidence to support his conviction for attempted escape.

The court's " ' "power to review a jury verdict challenged on grounds of insufficient evidence is limited." ' " "We will reverse a jury verdict only when, after viewing the evidence and all inferences drawn therefrom in a light most favorable to the verdict, we find that 'the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' "

*State v. Rudolph,* 2000 UT App 155, ¶ 22, 3 P.3d 192 (citations omitted).

## ANALYSIS

### I. Admissibility of Testimony

¶ 14 Silva contends that the trial court erred when it admitted the voice identification testimony of several witnesses because the State conducted an unduly suggestive pretrial identification procedure. Silva argues that the procedure was unduly suggestive because the State gathered several witnesses together in the same room for the purpose of identifying Silva's voice on tape

recorded phone conversations; and, in the case of another witness, the State presented the witness with tapes labeled "Conversations with Joey Silva."

¶ 15 Generally, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Utah R.Evid. 901(a). Rule 901 provides, by way of illustration, that a witness may identify a voice on a recording "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Utah R. Evid. 901(b)(5). The Supreme Court of Utah has declared that "for identification by voice of a person to be sufficient [to sustain a conviction], the identifier must either be familiar with the voice of the person identified or that person's voice possesses some peculiar characteristic which could not be easily mistaken." *State v. Kilpatrick,* 110 Utah 355, 357, 173 P.2d 284, 285 (1946) (per curiam); *accord State v. Booker,* 709 P.2d 342, 345 (Utah 1985) (holding that this "rule is limited to a situation in which the identification of the defendant by the sound of his voice is the *sole* piece of evidence tying him to the crime").

¶ 16 Silva argues that the trial court should not have admitted the voice identification testimony because voice identifications involve the same reliability concerns inherent in eyewitness identifications. *See State v. Long,* 721 P.2d 483, 488–93 (Utah 1986) (listing numerous factors affecting reliability of eyewitness identifications). Silva reasons that, due to these reliability concerns, the strict requirements for the admission of eyewitness identifications should also apply to the admission of voice identifications. *See State v. Ramirez,* 817 P.2d 774, 780 (Utah 1991) (requiring trial court to conduct "indepth appraisal of the identification's reliability along the lines laid out by *Long*"). Silva concludes that his due process rights were violated because the trial court admitted voice identification testimony that was rendered unreliable by unduly suggestive pretrial procedures.

¶ 17 We do not find Silva's argument persuasive for the following two reasons: (1)

The voice identifications in this case do not involve the same reliability concerns inherent in eyewitness identifications. (2) The trial court actually used the type of analysis required for the admission of eyewitness identifications; therefore, Silva was not harmed by the more stringent due process analysis.

¶ 18 First, we do not agree with Silva's argument that the voice identification testimony in this case has the same reliability concerns as eyewitness testimony. Though there may be times when a witness's voice identification implicates the same concerns as eyewitness identifications, this case does not present such a situation.[1] The present case merely involves the identification of a voice on several taped conversations.

¶ 19 The same concerns regarding the reliability of an eyewitness's identification do not necessarily arise in the identification of a voice on a taped conversation. In fact, the Utah Supreme Court has recognized the reliability differences between an eyewitness's identification and a taped recording of an event. *See Long*, 721 P.2d at 488. In *Long*, the court stated: "Anyone who stops to consider the matter will recognize that the process of perceiving events and remembering them is not as simple or as certain as turning on a camera and recording everything the camera sees on tape or film for later replay." *Id*. Here, the State had several recordings of Silva's activities; therefore, there are no concerns regarding the witness's perceptions and memories of a fleeting event. On the contrary, the primary concern here is the witnesses' ability to identify Silva's voice on the taped conversations. "The 'due process' procedure urged by appellant would, if generally applied, make a mockery of Rule 901 ... which requires only that the opinion of the witness be 'based upon hearing the voice

at any time under circumstances connecting it with the alleged speaker.'" *United States v. Albergo*, 539 F.2d 860, 864 (2d Cir.1976) (citation omitted) (rejecting appellant's argument that identification of defendant's voice on tape requires due process analysis akin to that used for admission of eyewitness testimony); *see also United States v. Wade*, 388 U.S. 218, 228–29, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967) (recognizing that the dangers of eyewitness identifications involve identifications made by witnesses to crime or victims of crime); *State v. Collins*, 60 N.Y.2d 214, 469 N.Y.S.2d 65, 456 N.E.2d 1188, 1191 (1983) ("The existing identification procedures were designed for cases involving 'eyewitnesses' or persons who actually witnessed the crime as a victim or bystander and may be unsuitable in other contexts."). Consequently, the admissibility of the voice identification testimony in this case is governed by Rule 901 of the Utah Rules of Evidence.[2]

¶ 20 The second reason we reject Silva's due process argument is because the trial court engaged in an analysis akin to that required for admitting eyewitness identification. *See State v. Ramirez*, 817 P.2d at 781. Though such a thorough analysis was unnecessary, the trial court clearly fulfilled its gatekeeper function by analyzing the constitutional admissibility of the voice identification. *See id.* at 778 (distinguishing trial court's role in making "any necessary preliminary factual findings" to reach legal conclusions concerning admissibility of evidence from jury's role in crediting or discrediting admitted evidence). Furthermore, the findings of the trial court show that the State satisfied the proper foundational requirements of Rule 901. *See* Utah R.Evid. 901(b)(5). Specifically, the trial court found that the witnesses were familiar with Silva's

---

1. Such a situation may arise when a person witnesses a crime but only hears the perpetrator's voice. If this witness later identifies someone based solely upon his or her recollection of the perpetrator's voice, that defendant may be entitled to a reliability analysis akin to that used for eyewitness testimony.

2. We recognize that the identification of a voice on a tape recording, like eyewitness testimony, involves perception and memory; however, virtually all testimony involves perception and

memory. Due process requires that courts scrutinize the admissibility of eyewitness testimony more stringently than the admission of other testimony for two reasons: first, "scientific literature is replete with empirical studies documenting the unreliability of eyewitness identification"; and second, "jurors do not appreciate the fallibility of eyewitness testimony [and] they give such testimony great weight." *Long*, 721 P.2d at 488. We are not convinced that these same factors exist regarding the voice identification here.

voice because they had all heard Silva speak on prior occasions. In addition, the court recognized that Silva had a particular accent that could not easily be mistaken by the witnesses.[3] Consequently, the court did not abuse its discretion when it determined that the witnesses reasonably identified the voice on the tape. *See Jacques,* 924 P.2d at 900. We conclude that Silva's due process rights were not violated because the court scrutinized the admissibility of the identification testimony under a standard more protective of Silva's due process rights than the admissibility requirements of Rule 901.

## II. Effective Assistance of Counsel

■ ¶ 21 Next, Silva argues that he was denied his constitutional right to effective assistance of counsel because his attorney failed to request a cautionary jury instruction regarding the unreliability of eyewitness identifications.

■ ¶ 22 "To bring a successful ineffective assistance of counsel claim, 'a defendant must show that trial counsel's performance was deficient in that it "fell below an objective standard of reasonableness," and that the deficient performance prejudiced the outcome of the trial.' " *State v. Gallegos,* 967 P.2d 973, 976 (Utah Ct.App.1998) (quoting *State v. Garrett,* 849 P.2d 578, 579 (Utah Ct.App.1993) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984))); *see also State v. Maestas,* 1999 UT 32, ¶ 28, 984 P.2d 376 (holding counsel's failure to request cautionary eyewitness instruction rendered his performance constitutionally deficient and prejudiced defendant). However, in analyzing a claim of ineffective assistance of counsel, the United States Supreme Court has stated, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052; *see also State v. Arguelles,* 921 P.2d 439, 441 (Utah 1996) ("Unless [defendant] has demonstrated that he was prejudiced by his trial counsel's performance, we

need not decide whether that performance was deficient."). "To show prejudice under the second component of the test, a defendant must proffer sufficient evidence to support 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Parsons v. Barnes,* 871 P.2d 516, 522 (Utah 1994) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

¶ 23 Here, Silva contends that his trial counsel's performance was deficient; however, he has not demonstrated that he was prejudiced by his trial counsel's failure to request a cautionary jury instruction. Silva points out that a cautionary jury instruction would have directed the jury to consider numerous factors regarding the reliability of the voice identification testimony. However, Silva's observation does not support a reasonable probability that, but for his counsel's alleged unprofessional errors, the result of the proceeding would have been different. *See id.* In fact, it is possible that a cautionary instruction regarding the testimony of the six officers may have actually bolstered the jurors' belief in the identification testimony. *See Long,* 721 P.2d at 492 n. 5 (Utah 1986) (referring to study indicating that strong eyewitness testimony coupled with cautionary jury instruction bolstered jurors belief in testimony). Consequently, we reject Silva's ineffective assistance of counsel claim because he has failed to demonstrate that he was prejudiced by his trial counsel's performance.

## III. Sufficiency of Evidence

■ ¶ 24 Silva's final argument is that the evidence was insufficient to support his conviction for attempted escape. "A prisoner is guilty of escape if he leaves official custody without authorization." Utah Code Ann. § 76–8–309 (1999). The court further instructed the jury that "without authorization means without lawful authority."

■ ¶ 25 "It is well established that a defendant's burden on appeal when challeng-

---

**3.** Nothing in the record suggests the witnesses, all of whom were familiar with Silva, would not

otherwise have been able to identify his voice.

ing the sufficiency of the evidence after a jury trial is to ' "marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." ' " *State v. Rudolph*, 2000 UT App 155,¶ 18, 3 P.3d 192 (citations omitted).

¶ 26 Although Silva jeopardized his claim by using overly broad strokes to fulfill his marshaling burden, we address his claim of insufficient evidence because here the broad strokes do not compromise the efficiency and fairness objectives that the marshaling requirement seeks to ensure. *See Oneida/SLIC v. Oneida Cold Storage*, 872 P.2d 1051, 1053 (Utah Ct.App.1994). Accordingly, we conclude that " 'the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' " *Rudolph*, 3 P.3d 192, 2000 UT App 155 at ¶ 22 (citation omitted). Specifically, the jury was not presented with any evidence indicating that Silva attempted to leave custody without authorization. In fact, Silva engaged in communications fraud for the sole purpose of obtaining the funding necessary to obtain the lawful authority to leave custody. Even when viewed in light most favorable to the verdict, we find that there was no evidence to support the verdict of attempted escape.[4]

## CONCLUSION

¶ 27 We hold that Silva's due process rights were not violated by the admission of the voice identification testimony pursuant to Rule 901(b)(5) of the Utah Rules of Evidence, and we dispose of Silva's claim of ineffective assistance of counsel. Consequently, we affirm Silva's conviction for communications fraud. However, we reverse Silva's convic-

tion for attempted escape because there was no evidence presented that would support the jury's verdict.

¶ 28 I CONCUR: NORMA H. JACKSON, Associate Presiding Judge.

ORME, Judge (concurring in the result in part):

¶ 29 I concur in the court's opinion, except that part of it which concludes there was insufficient evidence to sustain the conviction for "attempted escape."[1] I do concur in vacating the attempted escape conviction, but only because defendant's clever scheme, while punishable under other statutes, simply does not, as a legal matter, constitute an attempt to escape.[2] I do not see it as a question of the sufficiency of evidence.

¶ 30 On the contrary, the State amassed considerable evidence in support of its legal theory that in perpetrating a fraud on Slaugh's brother and the bail bondsman, Silva was also guilty of attempted escape. I see no gaps in the State's factual presentation; I see only a gap in its legal theory. Had Silva's ruse succeeded, he would have been, so far as the criminal justice system is concerned, properly released from jail. The bond posted by the bail bondsman would stand as security for his court appearance and Slaugh's brother's house would have made the bondsman whole had Silva jumped bail.

¶ 31 While clever, the scam Silva tried to pull was wrong. However, it could properly be addressed not only by a civil action for fraud at the brother's instance but also by bringing felony communications fraud charges, as was successfully done in this case. In sum, I think the majority's insufficiency of evidence focus is wide of the mark,

---

4. Notwithstanding the fact that Silva argues insufficiency of the evidence, our colleague is of a view that the issue is essentially legal rather than evidentiary—this despite his conclusion that "there is simply no quantum of evidence the State could have presented in support of its theory ..." The record does not reveal whether the State could have put on more or different evidence. Thus, no evidence to support a theory still amounts to insufficient evidence.

1. I do think the central role of Silva's distinctive New England accent bears emphasis. The reliability of the voice identification testimony would at least be more problematic if this same case arose in, say, the Suffolk County Jail in Boston, Massachusetts.

2. "A prisoner is guilty of escape if he leaves official custody without authorization." Utah Code Ann. § 76–8–309(1) (1999). A prisoner released on bail obviously leaves custody with authorization.

as there is simply no quantum of evidence the State could have presented in support of its theory that would have enabled us to sustain the conviction. In such a case, and regardless of how Silva phrased his argument, it seems conceptually sounder to recognize that Silva's misdeed does not legally constitute attempted escape than to speak in terms of the sufficiency of evidence.[3]

---

**3.** I think it is significant that the majority identifies no particular evidentiary shortfall in the State's presentation. Similarly, the majority points to no additional evidence it would have the State adduce to support its theory that what Silva did constituted an escape attempt, in order to survive a sufficiency-of-the-evidence challenge.