2003 UT App 273

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lavar T. JENSEN, Defendant and Appellant.**

**No. 20020359–CA.**

Court of Appeals of Utah.

July 25, 2003.

Heather Johnson, L. Monte Sleight, and Rudy J. Bautista, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, GREENWOOD, and ORME.

## OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 Lavar T. Jensen appeals his conviction of violating a protective order, a class A misdemeanor, in violation of Utah Code Ann. § 76–5–108 (1999). We reverse and remand for a new trial.

## BACKGROUND

¶ 2 On May 25, 1999, the trial court granted the victim in this case a protective order against Jensen. In June 2001, the prosecution charged Jensen with violating the protective order. He pleaded not guilty, and trial was held on October 16, 2001, with jury selection occurring earlier that day. After voir dire, the prosecutor used all three of her peremptory challenges on men. Jensen objected on the basis that the challenges were based on the gender of the jurors. The trial court asked the prosecutor to explain the challenges. She replied:

> I didn't even initially realize that all three of them were men, all three of my challenges were men until [defense counsel] just pointed it out. I have on my notations that the three struck [sic] were part of the protective order, and logically I assumed that usually they would be on defendant's side, since more than likely than not men are the respondents to protective orders, other than women. Those were my reasoning [sic].... I wasn't looking for men to strike. I left—I just went in order of the ones that were most likely to be called, and I was just looking through that, and that's why I left [a different male venire member] on. I was just going through. The next person that was part of a protective order was—the first ones [sic] I have noted is [the first male involved in a protective order]. The one after that, he was part of a protective order.

The trial court found that the State articulated a non-discriminatory reason and upheld the challenges.

¶ 3 Before the calling of any witnesses, Jensen was informed that the victim was not present to testify for the prosecution. Jensen immediately moved for a continuance, emphasizing that the prosecution had subpoenaed the victim, and that her presence as a witness was crucial to his defense. The trial court denied the motion.

¶ 4 After the State rested its case, Jensen moved for a directed verdict on the basis that the State did not prove Jensen was "properly served" with the protective order. As proof of proper service, the State had submitted a five-page document (the protective order document) into evidence. The first four pages contain a standard protective order. The first page names the victim as the petitioner and Jensen as the respondent. Boxes checked next to "Petitioner" and "Respondent" on that page indicate that both Jensen and the victim "were in attendance" at the protective order hearing. Page four is dated

May 25, 1999, and is signed by a district court judge and deputy court clerk, with a State of Utah seal next to the clerk's signature. Page five contains the signature, dated May 25, 1999, of a district court commissioner. That page also indicates, above a signature with Jensen's name marked "Respondent," that "[b]y this signature, Respondent approves the form, and accepts service, of this Protective Order and waives the right to be personally served." Based on the protective order document, the trial court denied Jensen's motion for a directed verdict.

¶ 5 The jury convicted Jensen for violating the protective order. Jensen now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 Jensen argues he was not "properly served" with a protective order, as required by Utah Code Ann. § 76–5–108 (1999). In doing so, Jensen claims that proper service is an element of the offense of violating a protective order. Which elements constitute an offense is a question of statutory interpretation, which we review for correctness. *See State v. McKinnon,* 2002 UT App 214, ¶ 3, 51 P.3d 729. Jensen also claims the trial court erred in admitting the last page of the protective order document under rule 902 of the Utah Rules of Evidence and insists that without that page, the evidence was insufficient to support his conviction. To determine whether the trial court correctly admitted the page in question, we apply a correction of error standard. *See State v. Silva,* 2000 UT App 292, ¶ 10, 13 P.3d 604. Ultimately, under the facts presented, whether Jensen was "properly served" is a question of law we review for correctness. *See Reed v. Reed,* 806 P.2d 1182, 1184 n. 3 (Utah 1991).

■ ¶ 7 Jensen also contends that the prosecution's stated reason for striking two potential jurors was gender-discriminatory,

in violation of his equal protection rights. "Absent a showing of clear error, we will not overturn a trial court's determination concerning the discriminatory intent embodied in a party's explanation for the exercise of a peremptory challenge." *State v. Chatwin,* 2002 UT App 363, ¶ 5, 58 P.3d 867.

## ANALYSIS

### I. Service of the Protective Order

■ ¶ 8 Jensen claims the prosecution was required to prove proper service as an element of the offense of violating a protective order. The only evidence offered by the prosecution to show service was the protective order document. Jensen argues that page five of that document was inadmissible. Without page five, Jensen insists, the evidence was insufficient to prove beyond a reasonable doubt that he was "properly served." Alternatively, Jensen argues all five pages of the protective order document were insufficient to prove proper service.

¶ 9 Under Utah Code Ann. § 76–5–108 (1999), any person subject to a protective order "who intentionally or knowingly violates that order *after having been properly served,* is guilty of a class A misdemeanor." (Emphasis added.) Although the prosecution must prove every element of a crime to sustain a conviction, *see* Utah Code Ann. § 76–1–501 (1999),[1] the State argues proper service is not an element of the offense. The State is incorrect. In *State v. Rudolph,* 970 P.2d 1221, 1233 (Utah 1998), the Utah Supreme Court plainly concluded that "an actor must have been 'properly served' with the protective order before he or she can be convicted of violating Utah Code Ann. § 76–5–108." Thus, Jensen's conviction required proof of proper service.[2]

■ ¶ 10 Jensen claims the trial court erred in admitting page five—the final

---

1. This statutory scheme is consistent with due process, which "requires that the prosecution prove every element of the charged crimes beyond a reasonable doubt." *State v. Lopes,* 1999 UT 24, ¶ 13, 980 P.2d 191.

2. Moreover, at trial, the prosecution treated proper service as an element. The trial court even used the prosecution's proposed jury in-

struction, which stated that the jury must find, "beyond a reasonable doubt," that the "protective order had previously been properly served on the defendant." Typically, a party may not raise an issue for the first time on appeal absent a showing of plain error. *See, e.g., State v. Bluff,* 2002 UT 66, ¶ 25, 52 P.3d 1210.

page—of the protective order document. Because the prosecution offered no evidence of authenticity, aside from the protective order document itself, the trial court correctly considered its admission under rule 902 of the Utah Rules of Evidence. Under rule 902, a certified copy of a public record, bearing the proper seal and signature, is a self-authenticating document requiring no extrinsic evidence of authenticity for admissibility. *See* Utah R. Evid. 902(1), (4). Here, Jensen does not challenge the admissibility of the first four pages. Jensen only challenges admission of the fifth page as self-authenticating, claiming that page five is entirely separate from the first four pages, which include the State's seal and court clerk's signature on page four.

¶ 11 A paper attached to a certified document must be "readily identifiable" with that document to be included in the certification. *Miller v. State*, 563 N.E.2d 578, 584 (Ind. 1990). *But see State v. Smith*, 63 Ohio App.3d 71, 577 N.E.2d 1152, 1156 (1989) (denying admissibility of " 'entire' writing" where a document stapled to the first document did not separately appear to be self-authenticating). Here, although page five does not contain a separate seal or court clerk signature, it is readily identifiable with the first four pages. Most importantly, the first page has a checked box signifying Jensen's presence at the protective order hearing. Consistent with this indication of Jensen's presence, page five contains a signature bearing Jensen's name, whereby the signee "accepts service, of *this Protective Order* and waives the right to be personally served." (Emphasis added.) Thus, we conclude the trial court correctly interpreted and applied rule 902 in admitting page five as part of a self-authenticating document.

¶ 12 Finally, the protective order document, including page five, proves that Jensen was "properly served." The document indicates Jensen attended the protective order hearing, thus putting him on notice of the protective order. Further, page five plainly states that Jensen accepted service and waived any other right to personal service.

The evidence was therefore sufficient to convict Jensen of violating a protective order.[3]

## II. Peremptory Challenges

¶ 13 Next, Jensen argues the prosecution violated equal protection by striking two potential jurors on the basis of gender. " 'The Equal Protection Clause of the Fourteenth Amendment governs the exercise of peremptory challenges,' " and " 'intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause.' " *State v. Chatwin*, 2002 UT App 363, ¶ 6, 58 P.3d 867 (quoting *J.E.B. v. Alabama*, 511 U.S. 127, 128, 130–31, 114 S.Ct. 1419, 1421–22, 128 L.Ed.2d 89 (1994)), *cert. denied*, 67 P.3d 495 (Utah 2003). Under the Supreme Court's *Batson* jurisprudence, *see Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), trial courts must apply a three-step test for determining whether a peremptory challenge violates equal protection. *See J.E.B.*, 511 U.S. at 144–45, 114 S.Ct. at 1429–30.

> "[O]nce the opponent of a peremptory challenge has made out a prima facie case of [gender] discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a [gender]—neutral explanation (step 2). If a [gender]—neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful [gender] discrimination."

*State v. Colwell*, 2000 UT 8, ¶ 17, 994 P.2d 177 (quoting *State v. Higginbotham*, 917 P.2d 545, 547 (Utah 1996)).

¶ 14 Here, the prosecution waived step 1 "by not raising it before explaining the reasons for its peremptory challenge[s]." *State v. Merrill*, 928 P.2d 401, 403 (Utah Ct.App.1996); *see Higginbotham*, 917 P.2d at 547 ("Where the proponent of the peremptory challenge fails to contest the sufficiency of the prima facie case at trial and merely provides a rebuttal explanation for the challenge, the issue of whether a prima facie case was established is waived.").

---

**3.** Jensen does not challenge any other element of the offense.

¶ 15 Under step 2, we conclude as a matter of law that the prosecution did not provide a gender-neutral explanation for the two strikes in question. *See Chatwin,* 2002 UT App 363 at ¶ 19, 58 P.3d 867 (determining prosecutor's explanation that was "clearly gender-based" violated equal protection). When asked by the trial court if she had a reason other than gender for her challenges, the prosecutor responded that each of the two men had been involved in a protective order and, although nothing in the record indicated whether the involvement was as a victim, perpetrator, or witness, she "logically assumed that usually they would be on the defendant's side, since more likely than not men are the respondents to protective orders, [rather] than women." Thus, the prosecutor's motivation was unavoidably linked to the jurors' gender. *Cf. State v. Cantu,* 778 P.2d 517, 518–19 (Utah 1989) (concluding the prosecution's motivation for striking a juror was "indirect[ly]" connected to the juror's race, yet still finding a violation of equal protection).

¶ 16 The State points to statistics showing that 95% of domestic violence perpetrators are male, and insists the prosecutor's challenges were thus "based on a gender-associated probability grounded in fact," and "not gender-based stereotypes." However, "[e]ven if a measure of truth can be found in some of the gender stereotypes used to justify gender-based peremptory challenges, that fact alone cannot support discrimination on the basis of gender in jury selection ... even when some statistical support can be conjured up for the generalization." *J.E.B.,* 511 U.S. at 139 n. 11, 114 S.Ct. at 1427 n. 11. Further, in *J.E.B.,* the Supreme Court's concern "focused not simply on stereotypes, but on any use of gender in the jury selection process." *Chatwin,* 2002 UT App 363 at ¶ 17, 58 P.3d 867.

¶ 17 Moreover, the prosecution did not simply challenge all venire members belonging to a predominantly male or female classification. *See J.E.B.,* 511 U.S. at 143 n. 16, 114 S.Ct. at 1429 n. 16 (suggesting that although "challenging all persons who have had military experience would disproportionately affect men at this time," such a challenge would not be gender-based). Instead of asking the court to inquire during voir dire which prospective jurors had been respondents in protective order cases and then striking those jurors if the court did not see fit to excuse them, the prosecutor admitted that she based her strikes on the assumption that the men previously involved in protective orders were likely respondents. By "rel[ying] upon ... gender when explaining the reasons underlying [her] peremptory challenge[s]," the prosecutor violated the equal protection clause. *Chatwin,* 2002 UT App 363 at ¶ 18, 58 P.3d 867.[4]

¶ 18 Therefore, we do not move to step 3 of the *Batson* test, *see Chatwin,* 2002 UT App 363 at ¶ 20, 58 P.3d 867, and we "conclude as a matter of law that the trial court clearly erred in allowing the prosecutor to strike the [two] potential juror[s]" in question. *Id.*

¶ 19 In the alternative, the State urges us to adopt the so-called "dual motivation" analysis, under which a number of jurisdictions have upheld peremptory challenges where the prosecution provided both a discriminatory and non-discriminatory explanation. *See, e.g., United States v. Tokars,* 95 F.3d 1520, 1533–34 (11th Cir.1996); *United States v. Darden,* 70 F.3d 1507, 1530–32 (8th Cir.1995); *Howard v. Senkowski,* 986 F.2d 24, 30 (2nd Cir.1993) (remanding under dual motivation analysis). *But see, e.g., State v. Lucas,* 199 Ariz. 366, 18 P.3d 160, 163 (App. 2001) (rejecting dual motivation approach); *Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205, 209–10 (1998) (same). Utah courts have

4. The prosecutor could have lawfully removed the same two jurors without relying on gender. First, she could have requested a question on voir dire identifying all who had been accused of or convicted of domestic violence or been subject to a protective order. She made no such request. If she had, she could have simply explained, when prompted, that she was removing all prospective jurors who answered this question in the affirmative. In fact, she probably would have been successful in removing them for cause. Finally, when asked for an explanation for her removal of the two male jurors, she could have simply stated that she was removing all prospective jurors who admitted to being involved in a protective order, whether as perpetrators, victims, or witnesses. However, that is not what occurred in this case.

not yet adopted the dual motivation analysis, *see Chatwin,* 2002 UT App 363 at ¶ 19 n. 2, 58 P.3d 867, and we decline to consider its adoption in this case.

¶ 20 The State claims that even if the prosecutor based her strikes on gender, she alternatively based them on past involvement with protective orders. After providing a discriminatory reason for challenging the jurors, the prosecutor backtracked, stating that she "wasn't looking for men to strike," and was instead simply going down the list of those venire members involved in protective orders, striking them in sequence. However, the prosecutor had already tipped her hand and admitted she challenged the jurors because they were *men* involved in protective orders. *Cf. Leahy v. Farmon,* 177 F.Supp.2d 985, 997, 997 n. 6 (N.D.Cal.2001) (noting important difference at jury selection between discriminating against "native Americans . . . employed by [a] tribe" and merely those generally employed by that tribe). The prosecutor's attempt at a "do-over" by retreating to the more general explanation of mere involvement in a protective order contravenes the plain language of her prior explanation and does not hold weight as a separate reason for the strikes.[5]

¶ 21 In sum, because the prosecutor did not provide a facially neutral explanation for the peremptory strikes in question, we reverse Jensen's conviction and remand for a new trial. *See J.E.B.,* 511 U.S. at 145–46, 114 S.Ct. at 1430.[6]

## CONCLUSION

¶ 22 We reverse Jensen's conviction and remand for a new trial given the prosecution's gender-based reason for striking two potential jurors.

¶ 23 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, JJ.

---

5. Furthermore, case law applying a "dual motivation" analysis has thus far involved non-discriminatory reasons completely separate from the discriminatory reasons for striking potential jurors. *See, e.g., Wallace v. Morrison,* 87 F.3d 1271, 1273 (11th Cir.1996) (applying dual motivation analysis where race was a factor, along with age and place of employment); *United States v. Darden,* 70 F.3d 1507, 1530–31 (8th Cir.1995) (applying dual motivation analysis where prosecutor considered a juror's race along with the fact that "[s]he said virtually nothing" when questioned); *Howard v. Senkowski,* 986 F.2d 24, 25, 30 (2nd Cir.1993) (applying dual motivation analysis where, in addition to believing a juror's race made him/her more sympathetic, the prosecution considered the juror's education level); *State v. Gattis,* 1996 WL 769328, at *3, 5–7, 1996 Del.Super. LEXIS 574, at *10, 19–22 (Del.Super.Ct. Dec. 11, 1996) (upholding strike where reasons for strike included juror's views of the death penalty and the fact that he

was an "older gentleman"); *State v. Williams,* 1999 WL 10256, at *2–3, 1999 Minn.App. LEXIS 38, at *6–7 (Minn.Ct.App. Jan. 12, 1999) (upholding strike where prosecutor's reasons included "a concern about the juror's lack of life experience," as well as a "perception that female jurors were 'more biased' against sexual assault victims"), *rev'd on other grounds,* 608 N.W.2d 837 (Minn.2000); *Guzman v. State,* 85 S.W.3d 242, 254 (Tex.Crim.App.2002) (applying dual motivation analysis where prosecutor's reasons included fact that juror was male, single, and had no children).

6. Because we reverse and remand on equal protection grounds, we do not reach Jensen's claim that the trial court's denial of his motion for a continuance to procure the victim's testimony violated his rights to due process and witness confrontation.