2002 UT App 18

**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael Antonio CANNON, Defendant and Appellant.**

No. 20000840–CA.

Court of Appeals of Utah.

Jan. 31, 2002.

Heather Johnson and Ronald S. Fujino, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Kenneth A. Bronston, Assistant Attorney General, Salt Lake City, for Appellee.

Before BENCH, GREENWOOD, and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Defendant, Michael Antonio Cannon, appeals his convictions for Theft by Receiving, a second degree felony, in violation of Utah Code Ann. § 76-6-408 (1999), and Purchase, Possession, or Transfer of a Handgun by a Restricted Person, a third degree felony, in violation of Utah Code Ann. § 76-10-503 (1999). For reasons unrelated to the charges, or the underlying evidence, we remand Cannon to the trial court for additional factual findings.

## BACKGROUND

¶ 2 The underlying facts behind Cannon's arrest being unnecessary to our disposition, we recite them in only the barest of detail. In March 2000, following the theft of several items from a police cruiser, Cannon was arrested and charged with theft, purchase, possession, or transfer of a handgun by a restricted person, and vehicular burglary.

¶ 3 The jury venire for Cannon's trial consisted of twenty-one people, each of whom was asked to complete a short questionnaire and read the answers aloud during voir dire. Once this process was complete, no further questions were asked of the venire, and the selection process began. During the jury selection, the State chose to exercise one of its three peremptory challenges to excuse the lone minority in the jury venire (Juror Three), and, in keeping with the standard set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), Cannon challenged the State's dismissal as discriminatory on its face.

¶ 4 In response, the prosecutor explained that Juror Three was not of the same racial group as Cannon. The prosecutor added that Juror Three seemed to have had difficulty understanding the voir dire questions, that he had had difficulty explaining himself, and that he was "one of the more undereducated people on the jury." The trial court accepted the prosecutor's stated reasons, noting only, however, that it had also noticed that the juror had not spoken clearly. Cannon was subsequently convicted of theft by receiving, and purchase, possession, or transfer of a handgun by a restricted person.[1] Cannon now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Cannon argues that the trial court erred in accepting the prosecutor's explanation regarding the use of a peremptory challenge on the sole minority member of the jury venire.[2] A trial court's determination that the opponent of a peremptory challenge has failed to prove purposeful racial discrimination "generally turns on the credibility of the proponent of the strike[.]" *State v. Colwell*, 2000 UT 8, ¶ 20, 994 P.2d 177. "As this is a question of fact, we will not reverse the decision of the trial court unless it is clearly

1. On May 25, 2000, the State amended the information to charge Cannon with theft by receiving, rather than theft, and dismissed the vehicular burglary charge.

2. Cannon also challenges the sufficiency of the evidence underlying his conviction for purchase, possession, or transfer of a dangerous weapon by a restricted person. However, our decision to remand this case for additional proceedings in the trial court compels us to defer reviewing this claim so as to eliminate any possible impact our conclusion might have on the trial court's *Batson* conclusions. *See State v. Pharris*, 846 P.2d 454, 459 (Utah Ct.App.1993) (stating "harmless error analysis is inappropriate for reviewing allegations of discrimination in jury selection").

erroneous." *State v. Bowman,* 945 P.2d 153, 155 (Utah Ct.App.1997). However, "[i]f the trial court fails to make adequate findings on the issue of discrimination ... [we] must remand the case to the trial court for further proceedings." *State v. Pharris,* 846 P.2d 454, 459 (Utah Ct.App.1993).

## ANALYSIS

¶ 6 While a party is permitted to exercise their peremptory challenges for virtually any reason, or for no reason at all, *see* Utah R.Crim. P. 18, our case law is clear: "parties in a criminal action may not discriminate against potential jurors by exercising peremptory challenges solely on the basis of race." *Colwell,* 2000 UT 8 at ¶ 14, 994 P.2d 177. To minimize the potential for deliberate racial discrimination, we have "increasingly limited the discretion of parties exercising peremptory challenges." *Pharris,* 846 P.2d at 460.

¶ 7 Should an allegation of purposeful racial discrimination be raised, a three step analysis is required. First, the trial court must determine whether the facts surrounding the discrimination allegation are sufficient to support a prima facie case (step 1). *See id.* at 460–61. If so,

"the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination."

*State v. Higginbotham,* 917 P.2d 545, 547 (Utah 1996) (quoting *Purkett v. Elem,* 514 U.S. 765, 766–69, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995) (per curiam)). We examine these steps in turn.

¶ 8 "The challenging party must first make out the prima facie case by presenting facts adequate to raise an inference of ... discrimination." *Colwell,* 2000 UT 8 at ¶ 18, 994 P.2d 177. "The mere fact that the subject of the peremptory strike is a minority member does not establish a prima facie case." *Id.* To satisfy this burden, the opponent of the strike must create a record establishing sufficient evidence to support the allegation of purposeful racial discrimination. *See id.* Here, however, following Can-

non's objection to the strike of Juror Three, the trial court accepted the challenge on its face, rather than asking Cannon to establish the necessary record. The Court then immediately required the State to provide a race-neutral explanation for its use of the peremptory challenge. On appeal, the State does not challenge the trial court's decision. We therefore accept the trial court's implied ruling that Cannon's objection established a prima facie case of purposeful racial discrimination.

¶ 9 The second step requires "the prosecutor to come forward with a race-neutral explanation for the challenge." *Higginbotham,* 917 P.2d at 548. This step "does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam). So long as the reasons given are " '(1)neutral, (2) related to the case being tried, (3) clear and reasonably specific, and (4) legitimate,' " *Colwell,* 2000 UT 8 at ¶ 22, 994 P.2d 177 (citation omitted), " 'the reason[s] offered will be deemed race neutral.' " *Purkett,* 514 U.S. at 768–69, 115 S.Ct. at 1771 (citation omitted).

¶ 10 Here, the prosecutor explained: [B]ased on [Juror Three's] answers to the Court's voir dire questions that he didn't appear to fully understand as well as some of the other jurors and he had difficulty explaining himself, that he is one of the more undereducated people on [sic] the jurors. I believe it's important for our case for the jurors to understand what's going on, understand the law. There's going to be some complicated issues [inaudible] to be decided. I believe that that would interfere with deliberations and him trying to explain himself or understand the legal issues involved.

While we find the prosecutor's reasons suspect, we cannot state with certainty that they are inherently discriminatory, accordingly, we have no choice but to conclude that the State's challenge was facially valid. *Id.*

¶ 11 The third step of the *Batson* analysis focuses not on "whether the prosecutor's explanation for the strike was factually correct, but whether it was a pretext to

disguise a racial motive." *Bowman*, 945 P.2d at 156. "To promote comprehensive analysis, trial courts must allow defendants an opportunity to attack the justifications offered by the prosecution for striking prospective jurors." *Pharris*, 846 P.2d at 464. Once this process is complete, it is up to "the trial court to decide whether the opponent of the peremptory challenge has proved purposeful racial discrimination." *Higginbotham*, 917 P.2d at 548. "This determination generally turns on the credibility of the proponent of the strike and will not be set aside unless it is clearly erroneous." *Id.* Moreover, "[b]ecause of the necessity of evaluating the discrimination issue according to specific analytical guidelines, the trial court *must* create a complete record." *Pharris*, 846 P.2d at 464 (emphasis added).

¶ 12 When a "trial court insufficiently assesses the facts or law relevant to the challenge" our case law directs us to remand the case to the trial court "to record sufficient findings of fact and conclusions on all the evidence relevant to its decision, to facilitate appellate review." *Pharris*, 846 P.2d at 465; *see also State v. Cantu*, 750 P.2d 591, 597 (Utah 1988) (*Cantu I*) (remanding case for the trial court to "determine if the exercise of the peremptory challenge violated defendant's right to equal protection under *Batson*"). "If, on remand, the trial court determines that racial discrimination motivated . . . the prosecutor's peremptory challenge[ ], it must reverse [the] defendant's conviction and retry his case." *Pharris*, 846 P.2d at 465 (citing *Batson*, 476 U.S. at 100, 106 S.Ct. at 1725).

¶ 13 In determining whether the peremptory challenge involved purposeful racial discrimination, the trial court must " 'undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." ' " *Pharris*, 846 P.2d at 461 (quoting *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721 (citation omitted)). During this inquiry, the trial court should examine the following factors to determine the legitimacy of the prosecutor's explanation:

"(1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to juror[s] who were not challenged."

*Bowman*, 945 P.2d at 155–56 (quoting *State v. Cantu*, 778 P.2d 517, 518–19 (Utah 1989) (citation omitted) (*Cantu II* )). If, following this analysis, the trial court does not conclude that the reasons for the proponent's challenge are " '(1) neutral, (2) related to the case being tried, (3) clear and reasonably specific, and (4) legitimate,' " the trial court must disallow the peremptory challenge. *Colwell*, 2000 UT 8 at ¶ 22, 994 P.2d 177 (citation omitted).

¶ 14 Here, the trial court's findings were limited to the following statement, made immediately after the prosecutor offered his explanation: "The Court would just note in the course—I'm sure both counsel noted it—that the Court on the voir dire that [Juror Three] did not speak clear[ly] and the Court did not understand him. I'll just make that comment as far as the race is concerned." We conclude that the trial court's finding is both incomplete and conclusory. It not only "creates difficulty in assessing the adequacy of the prosecutor's explanations on appeal," *Pharris*, 846 P.2d at 464, it fails to address both the prosecutor's general credibility, and whether the prosecutor's specific explanation was legitimately race neutral.

¶ 15 On remand, it is imperative that the trial court carefully examine each of these issues in light of the totality of the available information. For instance, while the prosecutor complained of Juror Three's lack of education, he failed to voice the same concern with any of the seven other venire persons who had similar, or identical, educational backgrounds. Nor was the prosecutor seemingly concerned that two of the venire persons eventually chosen to serve on the jury had no more education than Juror Three. Moreover, even assuming that Juror Three was the only member of the jury venire limited to a high school education, we are unconvinced that the issues presented during trial were so complicated as to require a substantial education.

¶ 16 Further, although the record suggests that Juror Three spoke softly in answering

his voir dire questions, nothing in the record supports the prosecutor's contention that he did not fully understand the questions, or that he had difficulty explaining himself. Moreover, the record contains several other examples, not involving Juror Three, suggesting soft-spoken venire persons, or venire persons whom the trial court had difficulty hearing. Accordingly, we are reluctant to accept the prosecutor's stated reasons without substantive findings by the trial court examining the *Bowman* factors. *See Bowman,* 945 P.2d at 155–56.

## CONCLUSION

¶ 17 We remand this issue to the trial court for an evidentiary hearing and entry of additional factual findings and legal conclusions. The trial court's findings must expressly examine the *Bowman* factors, *see Bowman,* 945 P.2d at 155–56 (quoting *Cantu II,* 778 P.2d at 518–19 (citation omitted)), and also expressly determine whether the prosecutor's challenge was " '(1) neutral, (2) relat-

---

**3.** Perhaps chief among the practical difficulties on remand is the fact that the trial judge who initially oversaw this case has retired and is not eligible to sit in any capacity. *See* Utah Code Ann. § 49–6a–701 (Supp.2001). Therefore, on

---

ed to the case being tried, (3) clear and reasonably specific, and (4) legitimate.' " *Colwell,* 2000 UT 8 at ¶ 22, 994 P.2d 177 (citation omitted). Finally, our case law compels us to remand this case notwithstanding the obvious practical difficulties.[3] If, on remand, the trial court determines that the prosecutor's explanation was pretextual, or that insufficient information exists to make adequate factual findings, or that making factual findings on the remand issue is impractical or otherwise not feasible, we direct the trial court to set aside Cannon's conviction and "retry his case." *Pharris,* 846 P.2d at 465.

¶ 18 I CONCUR: PAMELA T. GREENWOOD, Judge.

¶ 19 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.

remand, the trial court will be in a position not unlike that which we occupy, having not been present during the first trial.