2002 UT App 363

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeffery Ray CHATWIN, Defendant and Appellant.**

**No. 20010060–CA.**

Court of Appeals of Utah.

Nov. 7, 2002.

Rehearing Denied Dec. 4, 2002.

Heather Johnson and John D. O'Connell Jr., Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before JACKSON, P.J., and DAVIS, and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Defendant Jeffery Ray Chatwin appeals from his conviction of aggravated assault, a third degree felony, following a jury trial. We reverse and remand for a new trial.

## BACKGROUND

¶ 2 In June of 2000, after being charged with aggravated assault following a reported domestic disturbance, Chatwin pleaded not guilty. The trial court then set a November 21, 2000 trial date. On the morning of November 21, a jury venire was assembled and the trial court conducted voir dire. Following voir dire, the court directed the parties to select the jury.

¶ 3 After the normal process of jury selection was completed, the trial court excused the selected panel to address a concern raised by Chatwin's counsel. During the exercise of peremptory challenges, Chatwin's counsel observed that the Prosecutor had struck the sole minority who had been included in the venire. Chatwin's counsel raised this as a concern to the trial court, and, pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the trial court directed the prosecutor to explain his reasons for excusing the minority venire person.

¶ 4 The prosecutor, after briefly challenging whether Chatwin had established a prima facie case of discrimination, explained that he had struck the potential juror not on the basis of race, but because he felt

> that this jury would be better able to deliberate the evidence that I anticipate[d] presenting to it if [the jury was] balanced between men and women. I therefore made efforts to take men off of the jury. That may not make a great deal of sense, but that was the game plan. [The venire person] was a man, I took him because he was a man. . . .

Hearing this, Chatwin's counsel then informed the trial court *Batson* had been extended to prohibit the use of gender, as well as race, as a reason for exercising a peremptory challenge. *See J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). The trial court, however, discounted counsel's statement, explaining:

> Well, I am not prepared to state that the challenge was inappropriate. It appears to me that there's been a justification for exercising the challenge.... And moreover I'm not persuaded that in a case of this nature, specifically a spousal-abuse type of case, that selecting jurors, be they male or female which the Prosecutor or Defense for that matter decides might be more inclined to adhere to the Prosecution's theory of the case or the Defense's theory, for instance, that that was an inappropriate way or manner or justification for a challenge.

Thus, the trial court denied Chatwin's challenge to the prosecutor's strike and seated the jury as selected. Chatwin was then tried and convicted of aggravated assault, and subsequently sentenced to spend not more than five years in the Utah State Prison. The trial court, however, suspended this sentence and placed Chatwin on probation for one year. Chatwin now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Chatwin argues that the prosecution's stated reason for striking the potential juror was not neutral and constituted illegal discrimination. Thus, he continues, the trial court erred in countenancing the prosecutor's behavior. Absent a showing of clear error, we will not overturn a trial court's determination concerning the discriminatory intent embodied in a party's explanation for the exercise of a peremptory challenge. *See State v. Cannon,* 2002 UT App 18, ¶ 5, 41 P.3d 1153.

## ANALYSIS

¶ 6 "[T]he Equal Protection Clause of the Fourteenth Amendment governs the exercise of peremptory challenges," *J.E.B.,* 511 U.S. at 128, 114 S.Ct. at 1421, and "[i]ntentional discrimination on the basis of gen-

der by state actors violates the Equal Protection Clause, particularly where, as here, the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women." *Id.* at 130–31, 114 S.Ct. at 1422; *accord State v. Shepherd,* 1999 UT App 305, ¶ 28, 989 P.2d 503; *see also State v. Colwell,* 2000 UT 8, ¶ 14–22, 994 P.2d 177. Accordingly, if a party's reasons for the exercise of a peremptory challenge are discriminatory on their face, the trial court has a duty to disallow that challenge and failure to do so constitutes clear error that will result in our reversing an otherwise error-free conviction, and remanding the case for a new trial. *See J.E.B.,* 511 U.S. at 145–46, 114 S.Ct. at 1430; *Cannon,* 2002 UT App 18 at ¶¶ 11–13, 41 P.3d 1153.

¶ 7 To limit the possibility of discrimination creeping into our jury selection process, we have developed a body of law that establishes a well-defined path that must be followed once the opponent to a peremptory strike establishes a prima facie case of unlawful discrimination regarding that strike (or series of strikes). *See, e.g., Colwell,* 2000 UT 8 at ¶ 17, 994 P.2d 177; *Cannon,* 2002 UT App 18 at ¶¶ 6–13, 41 P.3d 1153; *Shepherd,* 1999 UT App 305 at ¶¶ 28–29, 989 P.2d 503. Under our jurisprudence, once the prima facie case has been established, the proponent of a peremptory strike must provide the trial court with a neutral explanation. *See Colwell,* 2000 UT 8 at ¶¶ 17, 19, 994 P.2d 177; *Cannon,* 2002 UT App 18 at ¶¶ 6–13, 41 P.3d 1153; *Shepherd,* 1999 UT App 305 at ¶ 28, 989 P.2d 503. And while the United States Supreme Court has determined that this explanation need be neither genuinely persuasive nor even entirely plausible, *see Purkett v. Elem,* 514 U.S. 765, 769, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam), in Utah the reasons given for striking a potential juror must be, at the very least, facially neutral, reasonably clear and specific, related to the case being tried, and legitimate. *See Cannon,* 2002 UT App 18 at ¶ 9, 41 P.3d 1153. Finally, should the strike's proponent tender a neutral explanation, the trial court must then look beyond the explanation, if possible, to determine whether the

strike was purposefully discriminatory. *See id.* at ¶ 13

■ ¶ 8 Here, in response to the argument mounted by Chatwin on appeal, the State asserts that at trial Chatwin failed to carry his burden of establishing a prima facie case of discrimination. Thus, the State continues, the trial court erred in requiring the Prosecutor to explain his reason for striking the potential juror. However, we conclude that because Chatwin raised this issue in the context of *Batson* and under the Federal Equal Protection Clause, this issue is controlled by the rule established in *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). In *Hernandez*, the State of New York offered an argument similar to the argument offered by the State in the instant case. *See id.* at 359, 111 S.Ct. at 1866. There, after the defendant had raised an objection to the prosecutor's use of peremptory challenges to exclude potential Latino jurors from the panel, the prosecutor offered his reasons for the challenges "without any prompting or inquiry from the trial court." *Id.*[1]

¶ 9 On appeal, the Supreme Court was not concerned with the effect of the prosecutor's decision to offer an explanation or the trial court's acquiescence with the prosecutor's decision. *See id.* Instead, the Court determined that "[o]nce a prosecutor has offered [an] explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot." *Id.* While we see no reason this rule should not apply equally to cases involving alleged gender discrimination, in the instant case, Chatwin's initial challenge focused on the excused juror's minority status; thus, the *Hernandez* rule is clearly applicable.

¶ 10 Therefore, because the prosecutor offered an explanation for his peremptory challenge and the trial court ruled on the ultimate question, we conclude that any discussion concerning Chatwin's attempt to establish a prima facie case is moot. Accordingly, we focus our analysis on the Prosecutor's explanation and, if necessary, the trial court's conclusions concerning the Prosecutor's explanation.

¶ 11 Chatwin argues that the explanation proffered by the Prosecutor in defense of his peremptory challenge clearly violated both the spirit and the letter of the Equal Protection Clause as highlighted by *J.E.B. See J.E.B.*, 511 U.S. at 145, 114 S.Ct. at 1430. In response, the State argues that Chatwin has misinterpreted the scope of *J.E.B.* and that the Prosecutor's strike was neither gender-based nor did it violate the principles articulated in *J.E.B.* In making this argument, the State offers three alternative explanations. We address each in turn.

¶ 12 At oral argument the State asserted that because this case involves gender and not race, the explanation of the Prosecutor and the decision of the trial court are subject to a less rigorous standard of review. *Compare Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227, 115 S.Ct. 2097, 2113, 132 L.Ed.2d 158 (1995) ("[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny. In other words, such classifications are constitutional only if they are narrowly tailored measures that further compelling governmental interests."), *with Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982) (stating that state action involving gender classification must serve an important governmental objective and be substantially related to the achievement of that objective). However, not only was this argument made for the first time at oral argument and unsupported by any relevant case law, our review of the relevant case law suggests that it is wholly inapplicable. *See Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 109, 122 S.Ct. 511, 513–14, 151 L.Ed.2d 489 (2001) (per curiam) (stating "application of our

---

1. We acknowledge that, unlike the situation presented in *Hernandez*, here the prosecutor attempted to argue that Chatwin had failed to establish a prima facie case prior to providing the required explanation. *See Hernandez v. New York*, 500 U.S. 352, 356, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). We do not, however, see this as material to our analysis.

[heightened] scrutiny standard should be addressed in the first instance by the lower courts" (quotations and citation omitted)).

¶ 13 Rather, we conclude that the plain language of *J.E.B.* itself provides the proper analytical framework for examining any possible equal protection violations during jury selection. In *J.E.B.*, the Court stated that "[w]hen persons are excluded from participation in our democratic processes solely because of [either] race or gender, [the] promise of equity dims, and the integrity of our judicial system is jeopardized." 511 U.S. at 146, 114 S.Ct. at 1430. Moreover, the Court categorically stated that "[f]ailing to provide jurors the *same* protection against gender discrimination as race discrimination could frustrate the purpose of *Batson* itself." *Id.* at 145, 114 S.Ct. at 1430 (emphasis added). Thus, contrary to the State's suggestion at oral argument, possible gender discrimination in the jury selection process is subject to the same examination as possible racial discrimination. *See id.* at 154–55, 114 S.Ct. at 1435 (Rehnquist, C.J., dissenting) (arguing that the court erred in failing to apply intermediate scrutiny).

¶ 14 Accordingly, *J.E.B.* mandates that whether the perceived discrimination involves race or gender, the responsible party must provide a facially *neutral* explanation for the strike or the peremptory challenge violates equal protection. *See id.* at 145, 114 S.Ct. at 1430. Should the record support a finding that the prosecutor provided the trial court with a facially neutral explanation, regardless of whether the challenger's objection is based upon race or gender, we then review the trial court's findings for clear error. *See Cannon*, 2002 UT App 18 at ¶ 5, 41 P.3d 1153. Therefore, contrary to the State's position at oral argument, we examine the record to first determine whether the prosecutor's explanation was neutral on its face, and then, if necessary, we proceed to examine the trial court's findings and conclusions.

¶ 15 The State next argues that rather than eliminating gender as an acceptable reason for a peremptory challenge, *J.E.B.* merely forbids the use of gender stereotypes in peremptory challenges. We disagree.

¶ 16 In *J.E.B*, the respondent, the State of Alabama, filed a paternity suit against the petitioner and used its peremptory challenges solely for the purpose of removing male jurors from the jury pool. *See J.E.B., 511* U.S. at 129, 114 S.Ct. at 1422. The petitioner appealed on equal protection grounds and the Supreme Court stated unequivocally that "gender, like race, is an unconstitutional proxy for juror competence and impartiality." *Id.* at 129, 114 S.Ct. at 1421.

¶ 17 In arriving at this conclusion, the Court noted that "[b]ecause [gender] stereotypes have wreaked injustice in so many other spheres of our country's public life, active discrimination by litigants on the basis of gender during the jury selection invites cynicism respecting the jury's neutrality and its obligation to adhere to the law." *Id.* at 140, 114 S.Ct. at 1427 (quotations and citation omitted). Thus, the Court continued, gender-related peremptory challenges are extremely suspect "in cases where gender-related issues are prominent, such as cases involving rape, sexual harassment, or paternity." *Id.* The Court's concern, therefore, focused not simply on stereotypes, but on any use of gender in the jury selection process. After reviewing *J.E.B.*, we conclude that the Supreme Court's discussion of stereotypes merely highlighted the fallacious reasoning that often underlies gender discrimination and it was not intended to permit so-called "non-stereotypical discrimination" as suggested by the State. Accordingly, the State's position concerning the central holding of *J.E.B.* is without merit and we conclude that gender is an impermissible reason for a party to strike a potential juror.

¶ 18 The State's final argument is that rather than evidencing an intent to discriminate on the basis of gender, the Prosecutor's explanation was merely an attempt to balance the composition of the jury to reflect the views of both men and women. Moreover, the State continues, such a rationale does not violate the precepts of *J.E.B.* In making this argument, the State seizes upon certain language contained in *J.E.B.* for support. *See id.* at 141–42, 114 S.Ct. at 1428.

However, our reading of this language, and its surrounding sections, suggests that the Court was merely explaining its rationale for prohibiting the use of gender in the exercise of peremptory challenges, not creating an exception. *See id.* In addition to noting that "gender, like race, is an unconstitutional proxy for juror competence and impartiality," *id.* at 129, 114 S.Ct. at 1421, the Court stated that

> [a]ll persons, when granted the opportunity to serve on a jury, have the right not to be excluded summarily because of discriminatory and stereotypical *presumptions* that reflect and reinforce patterns of historical discrimination. Striking individual jurors *on the assumption* that they hold particular views simply because of their gender is "practically a brand upon them, affixed by the law, an assertion of their inferiority."

*Id.* at 141–42, 114 S.Ct. at 1428 (emphasis added) (footnote omitted) (quoting *Strauder v. West Virginia,* 100 U.S. 303, 306, 25 L.Ed. 664 (1880)). Finally, the Court concluded that

> the Equal Protection Clause prohibits discrimination in jury selection on *the basis of gender,* or on *the assumption* that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man. As with race, the "core guarantee of equal protection, ensuring citizens that their State will not discriminate . . ., would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' [gender]."

*Id.* at 146, 114 S.Ct. at 1430 (alterations in original) (emphasis added) (quoting *Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723). From this language, we conclude that a proponent of a peremptory challenge violates equal protection when that proponent relies upon either race or gender when explaining the reasons underlying a peremptory challenge.

¶ 19 Here, contrary to the State's argument, the Prosecutor's explanation for the challenge to the potential juror was clearly gender-based. While the State suggests that the Prosecutor's intent was to seat "a jury composed of a fair cross-section of the community," not to remove jurors based on gender, the Constitution does not guarantee either the State or a defendant a jury comprised of any specific gender balance or composition.[2] *See id.* at 128, 114 S.Ct. at 1421; *Cf. Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975) (articulating a similar principle as applied to the racial composition of a jury). Rather, the Constitution guarantees only that every defendant will be tried by a jury whose members are selected pursuant to "nondiscriminatory criteria." *Batson,* 476 U.S. at 85–86, 106 S.Ct. at 1717. In attempting to create gender balance in the jury, the Prosecutor, by necessity, was forced to dismiss at least one potential juror on the basis of gender. Thus, the Prosecutor's criteria was discriminatory and in violation of the potential juror's equal protection rights.

¶ 20 Ordinarily, following our examination of the reasons proffered to explain a peremptory challenge, our focus would shift to examining the trial court's conclusions. *See Colwell,* 2000 UT 8 at ¶ 20, 994 P.2d 177. However, because it is clear that the prosecutor failed to provide a facially neutral explanation for his peremptory strike of the potential juror, and instead provided a reason that violated equal protection guarantees, we conclude as a matter of law that the trial court clearly erred in allowing the prosecutor to strike the potential juror. Con-

---

**2.** The State, in its brief, points to a number of cases from outside this jurisdiction to support its argument. However, after reviewing these cases, we conclude that they offer little or no assistance to the State's cause. Rather, as identified by the State, each of these cases deals with the so called "dual motivation" analysis, which has been adopted by a number of jurisdictions to avoid reversal when a party provides a clearly discriminatory rationale for exercising a peremptory challenge, but also provides at least one neutral explanation. *See, e.g., United States v. Tokars,* 95 F.3d 1520, 1533–34 (11th Cir.1996); *People v. Hudson,* 195 Ill.2d 117, 253 Ill.Dec. 712, 745 N.E.2d 1246, 1256–58 (2001). Because the Prosecutor in the instant case offered no neutral explanation to support his peremptory strike, we do not believe these cases offer any assistance to our analysis. Moreover, we have not adopted the "dual motivation" analysis and we conclude that this case does not present the proper case for its consideration.

trary to the trial court's belief, there are no circumstances under which a party is permitted to publicly rely upon an impermissible classification to make decisions concerning the composition of a jury. To hold otherwise would undermine the purpose outlined in both *Batson* and *J.E.B.:* to protect the integrity of the jury system and to ensure that potential jurors are not purposefully excluded through impermissible classifications, whether or not a party believes that it may factor into its eventual success or failure. *See Ex Parte State of Alabama,* 659 So.2d 169, 174 (Ala.1995).

## CONCLUSION

¶ 21 We therefore reverse Chatwin's conviction and remand for a new trial.

¶ 22 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JAMES Z. DAVIS, Judge.