2004 UT App 214

**STATE of Utah, Plaintiff and Appellee,**

v.

**Anthony James VALDEZ, Defendant and Appellant.**

**No. 20030089–CA.**

Court of Appeals of Utah.

June 24, 2004.

John D. O'Connell Jr. and Lori Seppi, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Christine Soltis, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

¶ 1 Anthony James Valdez appeals convictions for aggravated burglary, a first-degree felony, in violation of Utah Code Annotated section 76-6-203 (2002); possession of a dangerous weapon by a restricted person, a second-degree felony, in violation of Utah Code Annotated section 76-10-503(2)(a) (2002); and criminal mischief, a class B misdemeanor, in violation of Utah Code Annotated section 76-6-106 (2002). ̄ We reverse and remand.

## BACKGROUND

¶ 2 Valdez was prosecuted for various domestic violence charges, including the violent crimes listed above. On October 29, 2002, the district court conducted voir dire to select a jury for Valdez's trial. Following the jury selection, Valdez objected to the State's use of its peremptory challenges under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In order to demonstrate a prima facie case of discrimination under *Batson,* Valdez's counsel noted that the State used all four of its peremptory challenges to exclude women from the jury. Valdez further noted that in a domestic violence jury trial, gender issues tend to be highly charged. Ultimately, he argued, the State's exclusion of only women from the jury cannot be disregarded, on its face, in the context of this case.

¶ 3 The State did not argue that Valdez had failed to present a prima facie case of discrimination, but instead argued Valdez's *Batson* challenge was untimely. Without addressing the timeliness of Valdez's challenge, the district court ordered the State to explain its challenges. The State explained its challenges as follows:

> [T]he State chose to strike Ms. Valerio because she stated that she worked for a nonprofit brain injury type of place. That is not a basis upon which to strike her [for cause], but I felt her responses lined up in a way that would make her not a helpful [juror] for the State and that she would be somewhat overly compassionate.
>
> The second [juror] was Ms. Gonzalez. She had heard of the case and seemed—though she said that it wouldn't bother her, her responses to me seemed matter of fact and I felt like her responses would not make her a good juror for the State.
>
> Ms. Thornton had also heard of the case and I don't recall what it was, there was something that I immediately decided that I would make her one of my strikes. She'd also been on a jury and he was found guilty of a manslaughter, which I thought was probably a one-step reduction, at least that's the assumption. So again, I felt like she was not going to be a helpful one for the State.
>
> The last one I agonized over whether to strike, No. 19, Paul[a] Morely or 21 Ron Hardy, I conferred with my colleague, ...

and we talked about it and she brought to my attention he was a hunter and that she felt like a hunter would know things about guns and brought that point about that potential juror and another one. And after conferring with her I changed my mind and went with [her]—and that was simply—she was simply towards the end. I suppose there was also it felt like she was not strong, not—I'm sorry, I'm trying to read my notes here. . . .

There was this pattern of—her responses made me think she would be somebody, again, that might be willing to let bygones be bygones, what I would say overly compassionate, and it was just based on her responses about position, her responses to little subtle things like her teaching piano lessons and the magazines she chose. We don't have a lot to base these things on, so that's how I made those choices.

(First alteration in original.) Ultimately, the district court accepted the State's explanations and overruled Valdez's objection.

¶ 4 During the jury trial, the victim recanted her accusation against Valdez. The State called an expert in Battered Women Syndrom (BWS) to explain why many victims of abuse recant their accusation against their abuser. Valdez objected to the testimony, but the district court overruled the objection. The jury found Valdez guilty of aggravated burglary, possession of a dangerous weapon by a restricted person, and criminal mischief. Valdez appeals.

## ANALYSIS

¶ 5 Valdez challenges the district court's ruling that the State offered nondiscriminatory reasons for its use of peremptory strikes.

### I. Procedural Issues

¶ 6 As a preliminary matter, the State raises two threshold procedural issues that, according to the State, bar appellate review of Valdez's challenges.

### A. Timeliness

 ¶ 7 First, the State contends Valdez did not raise his *Batson* challenge in a timely manner. Under *Batson*, a challenge to a

peremptory strike must be timely. *See Batson v. Kentucky*, 476 U.S. 79, 99–100, 106 S.Ct. 1712, 1724–25, 90 L.Ed.2d 69 (1986) (allowing for local timeliness rules to bar *Batson* challenges); *Salt Lake County v. Carlston*, 776 P.2d 653, 655 (Utah Ct.App. 1989) (stating, in context of *Batson* challenge, "[i]t is axiomatic that, before a party may advance an issue on appeal, the record must clearly show that it was *timely* presented to the trial court in a manner sufficient to obtain a ruling thereon"). "Issues not raised in the trial court in timely fashion are deemed waived, precluding this court from considering their merits on appeal." *Carlston*, 776 P.2d at 655. What constitutes a timely challenge under *Batson* depends entirely upon local procedures, *see id.; Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991), but only " 'firmly established and regularly followed state [procedure]' may be interposed by a State to prevent subsequent [appellate] review" of this important constitutional claim. *Id.* at 423–24, 111 S.Ct. at 857 (citation omitted).

¶ 8 Valdez waited to raise his *Batson* challenge until after the venire had been dismissed, the jury had been sworn in, and the court preliminarily instructed the jury. The State refers us to several other jurisdictions that require a *Batson* challenge to be raised no later than "in the period between the selection of the jurors and the administration of their oaths." *Id.* at 422, 111 S.Ct. at 857; *see also Carlston*, 776 P.2d at 655–56 (citing favorably, in dicta, several jurisdictions that require *Batson* challenge to be raised prior to dismissing venire). The reason for barring a *Batson* challenge after the jury is sworn in has been variously stated as follows:

> The "timely objection" rule is designed to prevent defendants from "sandbagging" the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may largely have forgotten. Furthermore, prosecutorial misconduct is easily remedied prior to commencement of trial simply by seating the wrongfully struck venireperson. After trial, the only remedy is setting aside the conviction.

*Id.* at 656 (citations omitted); *see also People v. Holder,* 153 Ill.App.3d 884, 106 Ill.Dec. 700, 506 N.E.2d 407, 408 (1987) (stating waiver rule enforced "so as not to allow a defendant to object to that which he has acquiesced in" throughout trial).

¶ 9 Furthermore, the State argues, this rule is consistent with Utah Rule of Criminal Procedure 18(c)(2), which provides "[a] challenge to an individual juror may be made only before the jury is sworn . . . except the court may, for good cause, permit it to be made after the juror is sworn but before any of the evidence is presented." In *State v. Harrison,* the Utah Supreme Court applied rule 18's good cause provision to review an untimely *Batson* challenge. *See* 805 P.2d 769, 776 (Utah 1991). However, in that case the challenge was "made and argued immediately after the jury was sworn in, before the challenged jurors were excused from service, and before opening statements of counsel." *Id.* This is significant, the State maintains, because once the venire and the challenged jurors have been dismissed, the remedy of reinstating the wrongly challenged juror is no longer available. Thus, under the State's argument, *Harrison* represents the "outside limit" in Utah to timely raising a *Batson* challenge.

■ ¶ 10 However, under *Harrison,* a district court may consider a defendant's *Batson* challenge beyond the dismissal of the venire, even if it has made no specific finding of good cause pursuant to rule 18 of the Utah Rules of Criminal Procedure. *See* 805 P.2d at 776. So long as it "allow[s] counsel to proceed with their [*Batson* ] arguments," the district court impliedly finds good cause under rule 18 to consider the constitutional claim. *Id.* In this case, the district court did just that by ignoring the State's timeliness argument and requiring the parties to proceed directly to arguments on the merits. Thus, the district court impliedly found good cause under rule 18 to allow a challenge to the State's peremptory strikes beyond the usual limits.

■ ¶ 11 However, even if we adopted the State's position, we could not "interpose[ ]" it "to prevent subsequent [appellate] review" in this case. *Ford,* 498 U.S. at 424, 111 S.Ct. at 857. The rule the State proposes, which would prohibit *Batson* challenges after the venire has been dismissed and the jury has been sworn, has not heretofore been a " 'firmly established and regularly followed state [procedure].' " *Id.* at 423, 111 S.Ct. at 857 (1991) (citations omitted). At best, this rule could be gleaned by analogy and implication from *Harrison* and rule 18. However, rule 18 itself allows *Batson* challenges at a later time than the State's proposed rule, because it allows challenges "before any of the evidence is presented." Utah R.Crim. P. 18(c)(2). Thus, in the absence of any firmer and more established authority on the subject, we could not prevent appellate review of Valdez's constitutional claim due to lack of timeliness.[1]

B. Preservation

■ ¶ 12 Second, the State argues Valdez failed to preserve his objection to the State's explanation for the strikes. Specifically, Valdez did not challenge the validity of the prosecutor's explanations for the strikes. Consequently, the State argues, Valdez is precluded from attacking the State's explanations for the first time on appeal. "[T]o ensure the trial court's opportunity to consider an issue, appellate review of criminal cases in Utah requires 'that a contemporaneous objection or some form of specific preservation of claims of error must be made a part of the trial court record.' " *State v. Brown,* 856 P.2d 358, 360 (Utah App. 1993) (quoting *State v. Tillman,* 750 P.2d 546, 551 (Utah 1987)).

■ ¶ 13 We are persuaded by Valdez, however, that his initial objection to the State's use of peremptory challenges to strike women from the jury constituted sufficient preservation of his constitutional claim. *Ford v. Georgia* held that an appellate court cannot prevent review by applying a "rule unannounced at the time of petitioner's trial."

---

1. This issue would best be addressed by an amendment to the Utah Rules of Criminal Procedure. This opinion should not be read as a comment, positive or negative, on the appropriateness of the rule the State proposes.

498 U.S. 411, 424, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991). In Utah, there is no clear rule requiring a defendant to renew a *Batson* objection or to object specifically to the State's offered explanations. Rather, Utah courts do "not require a party to continue to object once a motion has been made, and the trial court has rendered a decision on the issue." *State v. Hoffhine*, 2001 UT 4,¶ 14, 20 P.3d 265. Here, Valdez objected to the State's use of peremptory challenges, thereby preventing any claim that he strategically hid his objection until after obtaining an unsatisfactory result, which seems to be the State's strongest objection to Valdez's challenge.

## II. Issue and Standard of Review

■■■ ¶ 14 Valdez specifically challenges the district court's ruling that the State offered a nondiscriminatory reason for its use of peremptory strikes. We are unaware of any cases properly applying an appropriate standard of review for such challenges. *State v. Chatwin* appears to set forth a "clearly erroneous" standard of review for such challenges. *See* 2002 UT App 363,¶ 5, 58 P.3d 867. "Chatwin argues that the prosecution's stated reason for striking the potential juror was not neutral and constituted illegal discrimination. . . . Absent a showing of clear error, we will not overturn a trial court's determination concerning the discriminatory intent embodied in a party's explanation for the exercise of a peremptory challenge." *Id.* To establish the clearly erroneous standard of review in the step two context, however, *Chatwin* cited, without analysis, *State v. Cannon*, 2002 UT App 18,-¶ 5, 41 P.3d 1153. That case set forth the clearly erroneous standard of review in the *step three* context, and is inapplicable here. *Chatwin* went further, however, and decided the step two question as a matter of law, rather than applying the clearly erroneous standard it previously set forth. Here, our decision will analyze and clarify the appropriate standard of review for step two challenges. Accordingly, we must determine the appropriate standard of review, relying on analogy to other standards of review applicable in cases involving alleged discrimination in the voir dire process.

■■■ ¶ 15 The challenge at issue involves the second step of a tripartite process for determining whether the prosecution has engaged in prohibited discrimination in the jury selection process. *See Chatwin*, 2002 UT App 363 at ¶ 7, 58 P.3d 867. The first step of that test requires that a defendant challenging the prosecutor's use of a peremptory challenge must present a prima facie case of discrimination. *See id.* A trial court's determination that a defendant has presented a prima facie case of discrimination is a matter of some discretion on the part of the trial court, and we will only reverse that determination where the trial court has abused its discretion. *See State v. Alvarez*, 872 P.2d 450, 456 (Utah 1994). The purpose for allowing the trial court some discretion in determining whether the defendant has presented a prima facie case of discrimination was stated by the Utah Supreme Court as follows:

> The abuse of discretion standard of review is particularly appropriate to this question. . . . [T]he United States Supreme Court was reluctant to define in detail what facts will raise an inference of discrimination. Likewise, we have not articulated specific factors that amount to a "strong likelihood" that minority jurors were challenged because of their racial or ethnic group membership. By according discretion to the trial court in this area, we permit "experience to accumulate at the lowest court level" until we "see more clearly what factors are important to [the] decision and how to take them into account."

*See id.* at 456 n. 3 (citations omitted). What may constitute a prima facie showing of discrimination in the context of one case may not constitute a showing of discrimination in the context of another case. This is so because each case may turn on different issues, or even subtly different nuances. Thus, we allow the trial court discretion in making the determination whether, in the context of the specific case, a defendant has presented a prima facie case of discrimination.

■■■ ¶ 16 The third step of the tripartite process for determining whether the

prosecution engaged in prohibited discrimination during the jury selection process requires the trial court to weigh the evidence and "look beyond the explanation, if possible, to determine whether the strike was purposefully discriminatory." *Chatwin*, 2002 UT App 363 at ¶ 7, 58 P.3d 867. More than being dependant on the particular issues, circumstances and nuances of a particular case, this determination requires the trial court to delve into a weighing of the evidence and the credibility of the prosecutor. *See Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991). This is an intensely factual determination, *see State v. Cannon*, 2002 UT App 18,¶ 13, 41 P.3d 1153, and we thus review the trial court's factual findings for clear error. *See State v. Jensen*, 2003 UT App 273,¶ 7, 76 P.3d 188.

¶ 17 In our view, the issue involved here, whether the prosecutor offered a legitimate, nondiscriminatory reason for the peremptory strikes, is closely analogous to the step one issue. It seems less like a factual issue because the trial court does not weigh evidence, but instead looks to the face of the State's explanations. *See Chatwin*, 2002 UT App 363 at ¶ 7, 58 P.3d 867 (stating prosecutor's explanation "must be, at the very least, *facially* neutral" (emphasis added)). The trial court's examination of the facial neutrality of the State's explanation also considers the general context of the case and the specific issues involved, *see id.* (stating prosecutor's explanation "must be ... related to the case being tried"), similar to the way the trial court considers whether the defendant has presented a prima facie case of discrimination. *See Alvarez*, 872 P.2d at 455–56. Indeed, the district court's consideration of the context of the case is an indispensable portion of the step two analytic framework, as we will discuss below. Thus, steps one and two in the analytical process appear to be analytic reciprocals. Accordingly, it is appropriate to consider this issue one of discretion with the trial court and to review the

trial court's determination for abuse of that discretion.[2]

### III. *Batson* and its Progeny

¶ 18 Valdez claims the State engaged in impermissible gender discrimination during the selection of the jury. In *Batson v. Kentucky*, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution governs the use of peremptory challenges by prosecutors in criminal trials. *See* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the United States Supreme Court stated that although a defendant has "no right to a 'petit jury composed in whole or in part of persons of his own race,' " *id.* at 85, 106 S.Ct. at 1717 (citation omitted), a "defendant does have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Id.* at 85–86, 106 S.Ct. at 1717. In *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the United States Supreme Court extended the holding of *Batson* to protect litigants from gender discrimination in the jury selection process: "We have recognized that ... litigants ... have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice.... We hold that gender, like race, is an unconstitutional proxy for juror competence and impartiality." *Id.* at 128–29, 114 S.Ct. at 1421.

> The litigants are harmed by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings....
>
> When state actors exercise peremptory challenges in reliance on gender stereotypes, they ratify and reinforce prejudicial views of the relative abilities of men and women. Because these stereotypes have wreaked injustice in so many other spheres of our country's public life, active discrimination by litigants on the basis of gender during jury selection "invites cyni-

---

2. Because Valdez's step two challenge constitutes a sufficient basis to reverse, we do not reach his alternate step three argument. Further, we do not reach Valdez's arguments regarding the admissibility of Battered Woman

Syndrome evidence within the context of this case. *See State v. Heaton*, 958 P.2d 911, 919 (Utah 1998) (holding where one argument is dispositive of the appeal, we need not address the defendant's remaining arguments).

cism respecting the jury's neutrality and its obligation to adhere to the law." The potential for cynicism is particularly acute in cases where gender-related issues are prominent, such as cases involving rape, sexual harassment, or paternity. Discriminatory use of peremptory challenges may create the impression that the judicial system has acquiesced in suppressing full participation by one gender or that the "deck has been stacked" in favor of one side. *Id.* at 140, 114 S.Ct. at 1427 (citations omitted).

■■■ ¶ 19 Pursuant to *Batson,* Utah courts apply a three-step test to determine whether the prosecutor has engaged in prohibited discrimination during the jury selection process. *See State v. Cantu,* 778 P.2d 517, 518 (Utah 1989) (applying three-step test to question of racial discrimination). This test equally applies in cases of gender discrimination. *See State v. Jensen,* 2003 UT App 273,¶ 13, 76 P.3d 188 (applying three-step test to question of gender discrimination). We have stated the test as follows:

"[O]nce the opponent of a peremptory challenge has made out a prima facie case of [gender] discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a [gender]-neutral explanation (step 2). If a [gender]-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful [gender] discrimination."

*Id.* at ¶ 13 (quoting *State v. Colwell,* 2000 UT 8,¶ 17, 994 P.2d 177 (other citation omitted)) (alterations in original).

¶ 20 In the State's brief, it concedes that it waived the issue of whether Valdez presented a prima facie case of discrimination. *See Colwell,* 2000 UT 8 at ¶ 18, 994 P.2d 177 (stating prosecution must challenge sufficiency of prima facie case before providing rebuttal explanation for strike, or issue is waived). Thus, we examine only step two of the analysis.

■■■ ¶ 21 Under this step, even "suspect" explanations must be deemed "facially valid" unless they are "inherently discrimina-

tory." *State v. Cannon,* 2002 UT App 18,-¶ 10, 41 P.3d 1153; *see also Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed [gender] neutral."). Although this step "does not demand an explanation that is persuasive, or even plausible," *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995), it does "require[ ] the proponent of the peremptory challenge, the prosecutor in this case, to come forward with a [gender]-neutral explanation for the challenge." *Colwell,* 2000 UT 8 at ¶ 17, 994 P.2d 177. Utah courts have enumerated a number of factors that must be considered within the context of the case at hand to determine whether the prosecution has offered a legitimate explanation:

The second step [of the analysis] requires "the prosecutor to come forward with a race-neutral explanation for the challenge." This step "does not demand an explanation that is persuasive, or even plausible." So long as the reasons given are " '(1) neutral, (2) related to the case being tried, (3) clear and reasonably specific, and (4) legitimate,' " " 'the reason[s] offered will be deemed race neutral.' "

*Cannon,* 2002 UT App 18 at ¶ 9, 41 P.3d 1153 (citations omitted).

¶ 22 The courts have been instructive in defining and applying each of these factors. For example, in *Hidalgo v. Fagen, Inc.,* the Tenth Circuit was asked to decide whether a defendant's explanation for a peremptory strike was facially neutral. *See* 206 F.3d 1013, 1018 (10th Cir.2000). In that case, the defendant struck a Hispanic woman from the venire, explaining that it was because of her youth. *See id.* The court, looking specifically at the facial validity of the defendant's explanation, concluded the strike was neutral, holding: "A neutral explanation means an explanation based on something besides the race of the juror.... Unless discriminatory intent is inherent in the justification, the reason offered will be deemed race neutral." *Id.* at 1019. Such a rationale is similarly applied to show gender neutrality.

¶ 23 The "legitimate" factor is closely related to the "neutral" factor. As this court has noted, the Supreme Court has provided guidance in determining whether the reason for a peremptory strike is legitimate: " 'a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.' " *State v. Merrill*, 928 P.2d 401, 404 (Utah Ct.App.1996) (citation omitted). For example, in *Merrill*, the defendant claimed that the reason the prosecutor gave for his peremptory challenge was not legitimate. *See id.* The prosecutor had dismissed a potential juror who was Asian. *See id.* at 402. The reason for the dismissal, the prosecutor explained, was because he feared the potential juror would be biased against law enforcement due to a recent speeding ticket. *See id.* We concluded that was a legitimate explanation because it "does not deny a potential juror equal protection." *Id.* at 404.

¶ 24 The reason for a peremptory strike must also be related to the case being tried. In *State v. Cantu*, a prosecutor's reason for a peremptory strike of a Hispanic potential juror was invalidated in part because it was unrelated to the juror or the case. *See* 778 P.2d 517, 519 (Utah 1989). The prosecutor's proffered reason for the strike was because he was angry with defense counsel. *See id.* The Utah Supreme Court held that this explanation was desultory, and thus insufficient to fulfill the *Batson* requirement that peremptory strikes must be based upon grounds reasonably related to the case at bar. *See id.*

¶ 25 Finally, the reason for a peremptory strike must be clear and reasonably specific. This factor prevents a prosecutor from merely denying the existence of a discriminatory motive or by generally proclaiming good faith, ensuring that equal protection will not become a "vain and illusory requirement." *Batson v. Kentucky*, 476 U.S. 79, 98, 106 S.Ct. 1712, 1724, 90 L.Ed.2d 69 (1986). Rather, it requires the prosecutor "to articulate a neutral explanation related to the particular case, giving a clear, concise and reasonably specific legitimate explanation for excusing those jurors." *New Mexico v. Aragon*, 109 N.M. 197, 784 P.2d 16, 21

(1989). There must also be support in the record for such an explanation. *See State v. Macial*, 854 P.2d 543, 547 (Utah Ct.App. 1993). For example, in *Aragon*, the prosecutor struck two prospective jurors who were black because they were possibly related to the defendant. *See* 784 P.2d at 17. The New Mexico Supreme Court noted that nothing in the record showed the prosecutor had any basis for his opinion that the potential jurors might be untrustworthy, other than his own statement of their possible blood relationship. *See id.* As a result, the court ruled that "[t]he prosecutor's explanation was hardly 'a clear, concise, and reasonably specific explanation for excusing those jurors.' " *Id.* at 21 (citation omitted). Accordingly, the court reversed the trial court. *See id.*

### IV. Valdez's *Batson* Challenge

¶ 26 With that analytical framework in mind, we approach Valdez's step two challenge. Valdez's argument that the State's peremptory challenges violated equal protection is persuasive. Specifically, Valdez argues that the State's reason for using peremptory challenges to strike only women was not reasonably clear or specific. As in *Aragon*, there is little in the record to demonstrate that the State had any basis for its strikes of these four women. For example, as Valdez aptly notes, the State explains that Jurors Morely and Valerio were "overly compassionate" and Gonzalez was "matter of fact" without providing any clear basis for its opinions other than these cursory descriptions. Further, the prosecutor stated variously "I felt her responses lined up in a way that would make her not a helpful witness for the State. . . . [H]er responses to me seemed matter of fact and I felt like her responses would not make her a good juror for the State. . . . I don't recall what it was [about Ms. Thornton], there was something that I immediately decided that I would make her one of my strikes." These explanations all fall short of being reasonably clear and specific. It is not enough for the prosecutor simply to describe a nondiscriminatory motive without tying it to something specific about the juror herself. *See United States v.*

*Horsley,* 864 F.2d 1543, 1546 (11th Cir.1989) (holding prosecutor's explanation that he struck juror because "I just got a feeling about him" "obviously [fell] short" of being reasonably clear and specific).

¶ 27 If the prosecutor cites demeanor as a reason for striking a juror, courts should apply "particularly careful scrutiny" because "such after-the-fact rationalizations are susceptible to abuse." *Brown v. Kelly,* 973 F.2d 116, 121 (2nd Cir.1992). Although not required, prosecutors "would be well advised ... to make contemporaneous notes as to the specific behavior on the prospective juror's part that renders such person unsuitable for service on a particular case." *Id.* In this case, however, the State was hardly clear, concise, or reasonably specific in its explanations. It offered nothing more than vague and generic descriptions of the jurors that anyone would concede are nondiscriminatory, but which do not appear to have anything to do with the jurors themselves. This is not sufficient to satisfy our equal protection jurisprudence, and is sufficient in itself to reverse the trial court's treatment of the State's peremptory strike.

¶ 28 In addition to not being reasonably clear and specific, some of the State's explanations were unrelated to the case at hand. For example, the State struck Thornton because she had been on a jury that had found a defendant, who had been charged with murder, guilty of manslaughter. As Valdez correctly notes, other than being a criminal offense, manslaughter has nothing to do with the present case. Valdez was not charged with manslaughter or any other lesser-included offenses. Furthermore, Thornton's participation on a jury that convicted another defendant of manslaughter does not undermine her ability to be impartial in the present case.

¶ 29 The State argues in its brief that these explanations were not inherently discriminatory because nothing in the explanations themselves pointed directly to the sorts of invidious stereotypes the law condemns. While this may be true, the test for determining the legitimacy and facial neutrality of an explanation in the *Batson* context is the list of factors outlined in *Cannon,*

*see* 2002 UT App 18,¶ 9, 41 P.3d 1153, and analyzed above. Unless the neutral explanation offered by the State may, on its face, be tied to the issues, evidence, and context of the case at hand, the explanation will not be considered legitimate. Rather, we will consider the explanation mere pretext as a matter of law, unrelated as it is to the reality of the proceedings before the district court.

¶ 30 Were we to hold otherwise, we would sanction the use of fanciful and spurious explanations for even the most sinister discriminatory motives. Without the requirement that the explanation at least have, on its face, a grounding in the context of the case itself, racist or sexist motives could more easily be masked by unrelated but inherently nondiscriminatory explanations. In such a case, the district court would have no need to proceed to step three to plumb the depths of the prosecutor's motivations because the State had offered nothing *concrete* by way of explanation. *See State v. Chatwin,* 2002 UT App 363,¶ 20, 58 P.3d 867 (holding State did not offer legitimate step two explanation, obviating the need to proceed to step three). This is just such a case. The prosecutor's explanations had no clear and specific basis in the case at hand. Thus, we hold it was an abuse of the district court's discretion to determine the explanations were nondiscriminatory and to proceed to step three.

## CONCLUSION

¶ 31 The State's peremptory strikes should have been invalidated by the trial court because the State failed to offer facially legitimate, nondiscriminatory explanations. The explanations were neither clear and specific nor related to the case being tried. Accordingly, we reverse and remand for a new trial.

¶ 32 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and PAMELA T. GREENWOOD, Judge.